# Richmond

LYNCHBURG STEAM BAKERY, INC., ETC. V. GEORGE VESTER
GARRETT.

November 16, 1933.

Present, Campbell, C. J., and Holt, Epes, Hudgins, Gregory
and Chinn, JJ.

The opinion states the case.

*John D. Easley,* for the plaintiff in error.

*S. H. Williams* and *Philip H. Hickson,* for the defendant in error.

CAMPBELL, C. J.,* delivered the opinion of the court.

This is an appeal from an award of the Industrial Commission in favor of George Vester Garrett. The facts found by the Commission are as follows:

"The evidence disclosed, as the pertinent facts surrounding the issue, that a twelve-year-old son of the shipping clerk of the employer had entered the premises at

---

* By reason of circumstances over which the court had no control, it became necessary to reassign the task of preparing this opinion. This accounts for the delay in deciding the case.

about 8:15 o'clock P. M. The foreman knew that he was there in violation of a plant rule prohibiting loitering. He knew the boy possessed a gravel-shooter, and that he had threatened to shoot him (the foreman) with it. This foreman admonished the boy against the danger of using the device in the plant.

"The boy threatened to shoot the claimant and the device was taken from him and turned over to his fourteen-year-old brother; this was done on two occasions; lastly, while the claimant was pursuing the duties of his employment, the boy shot him in the right eye with a paper clip, entirely destroying the vision of that eye.

"It was stated by the foreman that he was not inclined to enforce the rule prohibiting loitering because he felt that that was the duty of the boy's father, who was shipping clerk."

The ruling of the Commission that the claimant's injury "arose out of and in the course of his employment" is assigned as error.

This court, in *Farmers' Manufacturing Co.* v. *Warfel,* 144 Va. 98, 131 S. E. 240, 241, has construed the language "arising out of and in the course of the employment." Prentis, C. J., delivering the opinion of the court, said:

"In *Edelweiss Gardens* v. *Industrial Commission,* 290 Ill. 459, 125 N. E. 260, compensation was allowed to dependents of a deceased waiter in a restaurant, who was struck by a boy working in the same restaurant, arising out of a sudden quarrel during the performance of their duties.

"While it seems impossible to formulate any general rule which can be applied to all cases, this seems to be a fair statement taken from the case last cited: 'If the injury can be seen to have been a natural incident of the work, and to have been contemplated by reasonable persons as the result of the exposure occasioned by the nature of the employment, it may be said to have arisen out of the employment. An injury not fairly traceable to the employment as the contributing proximate cause, and which comes from a hazard to which the employee would

have been equally exposed otherwise, does not arise out of the employment. The causative danger must be peculiar to the work, and incidental to the character of the business. This court has sustained an award for an injury to an employee received in a fight with another employee, which was not a mere personal matter, but grew out of a quarrel over the manner of conducting the employer's business, and where the evidence tended to show the injured employee was not responsible for the assault. *Pekin Cooperage Co.* v. *Industrial Com.*, 285 Ill. 31, 120 N. E. 530; *Swift & Co.* v. *Industrial Com.*, 287 Ill. 564, 122 N. E. 796; *Chicago, R. I. & Pac. Ry. Co.* v. *Industrial Com.*, 288 Ill. 126, 123 N. E. 278 (10 A. L. R. 1170).' "

The facts found by the Industrial Commission disclose that appellant had promulgated a rule against trespassing upon its property; that the foreman of the plant, whose duty it was to enforce the rule, was cognizant of the fact that the young son of the shipping clerk was present as a trespasser, and that he had in his possession an instrumentality which might cause injury; that the boy did threaten to use the gravel-shooter, and instead of being ejected from the premises by the foreman, he was only admonished not to shoot anyone with it. Such action upon the part of the foreman was not a discharge of the duty which employer owed the employee to afford him a safe place in which to perform his duties. So long as the boy remained upon the premises with the knowledge and acquiescence of the foreman, armed, as he was with a potentially dangerous instrumentality, the hazards of employment were increased. It was as much the duty of the foreman to remove the hazard of which he was aware as it was his duty to have a defective machine repaired. The fact that the foreman, out of consideration for the father, failed to perform his primary duty to the employee, to afford him protection from a potential injury, was a deliberate injection of an element of danger which did not theretofore exist.

No one will contend that under the provisions of

the compensation act an employer is an insurer of the safety of the employee, but when an employer knows of a hazard to which the employee is subjected, it is his duty to remove the hazard or in some other way to afford adequate protection to his employee. The ejection of the boy by the foreman, or even the taking from him of the gravel-shooter was all that was necessary. That the foreman knew the actual condition is demonstrated by his testimony:

"Q. You are foreman out at the Lynchburg Steam Bakery?

"A. Yes.

"Q. You were at the plant during the evening or night hours?

"A. Yes.

"Q. What are the orders about children at the plant?

"A. Not allowed around there. If they come in on business, they are supposed to go right out; not supposed to be in the shop at all.

"Q. Did you know on the evening of January 22nd that these two Wallace boys were in the plant?

"A. I knew they were there a little after eight o'clock; didn't know how long. I saw them in the shipping department.

"Q. Did you know the boy was shooting a gravel-shooter?

"A. Yes, I didn't see him shoot it, but did see him with it, cautioned him not to shoot it.

"Q. When is the first time you saw him?

"A. A little after eight o'clock, probably quarter past or fifteen past eight.

"Q. What were the circumstances?

"A. At that particular time, I was passing by and I was carrying bread for it to cool before it was wrapped. He made a threat to shoot at me, said, 'Wait until he turns his back.' When he said that I went to see what he had and I cautioned him not to shoot that thing around there; I said it was a dangerous thing and he would put some-

body's eye out. I went back to the shop. I saw him one other time after that. He came through from one door in the shipping room past the bench where we were working and when he threatened to shoot another boy, I heard this other boy remark, 'Don't shoot that thing. You better not shoot me with it.' He kept on back to the shipping room.

"Q. Why did you not enforce the rule in this case?

"A. I felt that it was his father's duty to do that because he was there with his daddy, came to see his father.

"Q. Is his father in the shipping room?

"A. Yes.

"Q. While you were in the bakery?

"A. Yes.

"Q. At the time of the actual injury, Mr. Garrett was in the discharge of his regular duties at that time?

"A. Yes, coming from the dressing room to the ovens where he waited for the Pullmans to be baked.

"Q. So that you knew practically an hour before the accident that the boy was present with his gravel-shooter and threatening to shoot the people?

"A. Yes."

The case of *Waldo* v. *Galveston, etc., Ry. Co.* (Tex. Com. App.), 50 S. W. (2d) 274, 276, while not directly in point because of the dissimilarity of the statutes, is, as far as the facts are concerned, very similar. There, the clerks employed in a railroad office engaged in the practice of shooting wire paper clips with rubber bands. The claimant did not participate in the shooting and on two occasions notified the office supervisor of the shooting of paper clips by other employees and that one employee had been struck and severely injured. The supervisor promised to stop the shooting, but failed to do so. Shortly thereafter the plaintiff was struck in the eye by a paper clip, causing the loss of his eye. In holding that the employee was entitled to compensation, the court said:

"Under the facts and circumstances above recited, we have no hesitation in deciding that the railway company

owed to plaintiff in error and other employees the duty to exercise reasonable diligence to prevent the continuance of a practice reasonably calculated to injure employees while actively engaged in the discharge of their duties. Such rule places no undue burden upon the master, and gives to the employee a protection to which he is fairly and justly entitled."

■ No case has been cited which holds that causal connection between the employment and injury is lacking where the employer knew of a hazard to which the employees were subjected, without fault on their part, while in the course of their employment, and which the employer was under duty to remove and failed to remove.

Our conclusion, then, is to affirm the order of the Industrial Commission.

*Affirmed.*