19708

George G. CARTER, Respondent, v. PENNEY TIRE AND RECAP-PING COMPANY and Potomac Insurance Company, Appellants

(200 S. E. (2d) 64)

*Messrs. Wendell O. Adams,* of Walterboro, and *Murdaugh, Eltzroth & Peters,* of Hampton, *for Respondent,* cite:

*Lester E. Stringer, Esq.,* of Charleston, *for Appellants,* cites:

October 26, 1973.

BUSSEY, Justice:

This is an appeal by the employer-carrier in a Workmen's Compensation case from an order of the circuit court affirming an award of compensation to the claimant Carter. The sole issue on appeal is whether claimant's injury "arose out of" his employment, it being conceded that he was injured while in the course thereof. There is little, if any, dispute as to the facts or as to the inference reasonably deducible therefrom.

On January 29, 1969, Carter was shot with a pistol by one Franklin Crosby. At the time Carter had come home on leave from the U. S. Army and was at work as an employee of Penney Tire and Recapping Company. Carter and two others were engaged in putting a roof upon a shed used for the storage of tires. Penney's place of business is located on Highway 15, near Walterboro, South Carolina. A circular driveway from Highway 15 goes completely around and passes to the rear of the Penney business establishment. To the rear of such establishment, across the driveway, is an

automobile repair garage operated by one Williams. Approximately one week before the date of the assault, Carter and a co-employee, Hiers, had some words or a quarrel with Crosby at a drive-in restaurant near Walterboro, arising out of a previous difficulty between Crosby and Hiers, but no fight occurred on this occasion. On the morning of the date of the assault, Crosby had occasion to go to the automobile garage to the rear of the Penney establishment and, seeing Carter and Hiers upon the roof of the Penny Shed, made threatening gestures. Later, while Carter and Hiers were at lunch, Crosby returned to the vicinity and sent by another threats to Carter and Hiers. Before returning to his work on the roof after lunch, Carter reported such threatened trouble with Crosby to his employer, Mr. Penney, who assured Carter that he would be protected and instructed him to return to the roof and go ahead with his work. Shortly thereafter, Crosby returned to the vicinity and upon observing his approach, Carter came down the ladder from the roof for the purpose of advising Mr. Penney of Crosby's return. As he turned away from the ladder, he was shot in the forehead and seriously injured.

Included in the findings of fact by the single Commissioner, affirmed by the full Commission and not here challenged, was the following:

"That the employer had complete knowledge of impending danger to the employee from an outside force; and that full protection was guaranteed employee by employer."

Both employer and claimant agree that a quotation from *Mazursky v. Industrial Commission*, 364 Ill. 445, 449, 4 N. E. (2d) 823, 825, contained in the opinion of this Court in *Bridges v. Elite, Inc.*, 212 S. C. 514, 48 S. E. (2d) 497, 499, is a good statement of the rule as to when an injury may be said to arise out of the employment in Workmen's Compensation cases. The quotation is as follows:

"It arises 'out of' the employment, when there is apparent to the rational mind upon consideration of all the circum-

stances, a causal connection between the conditions under which the work is required to be performed and the result-. ing injury. Under this test, if the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises 'out of' the employment. But it excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause and which comes from a hazard to which the workmen would have been equally exposed apart from the employment. The causative danger must be peculiar to the work and not common to the neighborhood. It must be incidental to the character of the business and not independent of the relation of master and servant. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence."

While there is agreement as to the proper rule, as usual, the difficulty arises in the application of the rule to the facts of a particular case. The appellants strongly rely on *Bridges v. Elite, Inc., supra;* but we deem that case to be factually distinguishable from the instant case. There the employer had no knowledge of the seriousness of the threats or danger to the employee, a fact pointed out in the opinion. In addition, the evidence showed that the assailant was seeking out the employee and would have killed her wherever he found her. Professor Larson in Sec. 11.21 of his work on Workmen's Compensation Law refers to the *Bridges* case in the following very apt language:

"In a South Carolina case the deceased employee was shot by her lover in a sort of Frankie-and-Johnnie tragedy. The inevitability of the murder without regard to the employment is shown by the assailant's attempt earlier to find her at her boarding house, after having sent word by a friend that he was going to 'put five 38's in her,' a promise which he

carried out with perfect accuracy as to both number and caliber of the shots."

In the instant case it is acknowledged that the employer had full knowledge of the impending danger in the face of which he required the employee to return to work, assuring him of full protection from such danger by the employer. No facts or circumstances are in evidence in the present case pointing to the inevitability of the assault without regard to the employment and the place and circumstances thereof. There is no evidence of any long standing difficulty between Carter and Crosby, or that Crosby sought or intended to pursue Carter or the difficulty had he not, perchance, happened to see him working on the roof in the course of his employment. At least a reasonable inference is that but for this chance sighting, Carter might well never again have encountered Crosby, let alone been harmed by him.

The appellants cite and rely on various other cases wherein compensation has been denied because the assaults have been held not to have arisen out of the employment. Suffice it to say that no case has been cited or come to our attention wherein compensation has been denied and the factual situation was even approximately the same as the factual situation in the instant case.

On the other hand, the holding that the injury arose out of the employment, under the facts of this case, has the support of authority from other jurisdictions, in cases which are not precisely in point factually, but which are closely analagous to the instant case. Larson, Workmen's Compensation, Sec. 11, commences with the following:

"Assaults arise out of the employment either if the risk of assault is increased because of the nature or setting of the work, or if the reason for the assault was a quarrel having its origin in the work. * * * Assaults for private reasons do not arise out of the employment unless, by facilitating an assault which would not otherwise be made, the employment becomes a contributing factor."

There is an annotation "Workmen's Compensation—Assault" in 112 A. L. R. commencing at page 1258. Section II c deals with assaults "by one other than employee" and it is there stated:

"Where there is some causal connection between the employment and the assault or where the conditions of the employment have the effect of exposing the employee to an assault, it is generally held, in the absence of extenuating factors, that the injury is compensable."

In *Garic v. Garic,* 14 La. App. 585, 130 So. 563, a part of the employer's premises, adjacent to where the employee was required to work, was leased to one Horac, a combative character of "violent or vicious characteristics". The employee was held entitled to compensation as a result of being assaulted by the said Horac.

In *Berresi v. Ryan,* 242 App. Div. 279, 275 N. Y. S. 370, compensation was awarded where the employer knew there was enmity between his employee and a third person, for reasons not related to his employment, but with this knowledge, he sent his employee to deliver a load of feed to the third person who shot the employee.

In *Myott v. Vermont Plywood, Inc.,* 110 Vt. 131, 2 A. (2d) 204, the claimant was injured while working on the night shift by a prank committed by one Dunn who worked on the day shift and had no business on the day shift and had no business on the premises at the time, having come by merely to "talk with the boys", at one or two o'clock in the morning. There was a finding that there was knowledge attributable to the employer that Dunn and other men quite often went into the employer's plant at night without any business there and that they were trespassers. It was held that the claimant was injured as a result of being exposed to such additional risk, which risk was within the reasonable contemplation of the employer, and compensation was awarded.

In *Lynchburg 'Steam Bakery v. Garrett,* 161 Va. 517, 171 S. E. 493, it was held that an employee's injury arose out of his employment where he was shot in the eye with a gravel shooter by a small boy, the son of the shipping clerk, who had threatened to shoot one or more persons with such gravel shooter. The foreman, with knowledge of the threats, had warned the boy not to shoot any one but had failed to eject him from the premises despite rules forbidding the presence of loiterers.

In *Wilson v. Boyd & Goforth,* 207 N. C. 344, 177 S. E. 178, the claimant's injury was held to have arisen out of his employment under the following facts. The claimant, a Negro boy, was working on a septic tank under the supervision of a foreman, Ostwalt, who was present. One Gilbert, a white employee of the same corporation but in a different department, was intoxicated, came upon the scene, and apparently without any provocation whatever assaulted and pursued the claimant with the final result the claimant broke his leg in trying to get away. Gilbert's assault and pursuit extended over a period of three or four minutes, during which Oswalt, the foreman, made no real effort to aid or protect the claimant.

While none of the cited cases are on all fours factually with the instant case, they are factually quite similar and strongly persuasive that the result reached by the Commission and affirmed by the lower court is correct. In each of them, as here, the employee was required to perform his duties under circumstances where he was endangered by a peril from a source outside of and unrelated to his actual work, which peril was known to the employer and against which the employer afforded no protection or relief. Particularly persuasive is the decision of the North Carolina Court, because, as previously held, our Workmen's Compensation Act was fashioned after the North Carolina Act and the opinions of the North Carolina Court construing such Act are entitled to great weight with this Court. See

*Flemon v. Dickert-Keowee, Inc.,* 259 S. C. 99, 190 S. E. (2d) 751, and cases therein cited. To the extent that the opinion of the North Carolina Court in the Wilson case is a construction of statutory language, identical with that contained in the Workmen's Compensation Act of South Carolina, there is a presumption that this case was known to the General Assembly of this State and in effect intended by it to become a part of our compensation law upon its adoption. The Wilson case was decided in 1934 and our Workmen's Compensation Law was enacted the following year, 1935. See *Flemon v. Dickert-Keowee, Inc., supra.*

The Commission found as a fact that the claimant's injury did arise out of his employment and to the extent that the issue is, in part, a factual one, we are bound by such finding of fact, which we think had adequate support in the evidence and the inferences reasonably deducible therefrom. We regard, however, the issue as primarily one of law, the facts being virtually undisputed. It is settled law that our Workmen's Compensation Act is entitled to a liberal construction in furtherance of the beneficial purposes for which it was designed, and no citation of authority is necessary for this elementary proposition.

Under the rationale of the authorities hereinabove cited and discussed, we conclude that there was no error of law in holding that claimant's injury here arose out of his employment within the meaning and intent of the Workmen's Compensation Law. The judgment below is, accordingly,

Affirmed.

Moss, C. J., and LEWIS, BRAILSFORD and LITTLEJOHN, JJ., concur.