JOSEPHINE PLUMMER

V.

LANDMARK COMMUNICATIONS, INC.

Record No. 861201

March 4, 1988

Present: All the Justices

*John F. Rixey (Rixey & Rixey*, on brief), for appellant.
*William M. Harris (Taylor, Gustin, Harris, Fears and Davis*, on brief), for appellee.

COMPTON, J., delivered the opinion of the Court.

In this negligence action by an employee against an employer seeking recovery for personal injuries, the dispositive question is whether the plaintiff's exclusive remedy was under the Workers' Compensation Act (the Act).

On June 26, 1982, appellant Josephine Plummer was shot by an unknown assailant in the City of Virginia Beach. At the time, she was a route carrier of newspapers published by appellee Landmark Communications, Inc. She was waiting in her automobile in a darkened parking lot near 2:00 a.m. to obtain her supply of newspapers for delivery.

In June 1983, Plummer filed a claim under the Act in the Industrial Commission of Virginia, alleging that she was shot and injured in an accident arising out of and in the course of her employment with Landmark. A hearing on the claim was held before a deputy commissioner in August 1983.

In September 1983, Plummer filed the present action against Landmark as well as the owners of the premises where the incident occurred. The owners are not parties to this appeal, counsel for Plummer representing on brief that her action against them was compromised and settled.

In the original motion for judgment, the plaintiff alleged that she was injured while operating as an independent contractor under the direction and control of defendant Landmark. She asserted that defendant was negligent "for failing to provide . . . a

safe place to work and for sending her to work without taking reasonable measures to protect her."

In April 1984, the deputy commissioner issued an opinion deciding that Plummer was an employee, not an independent contractor, at the time of the injury and that the claimant was engaged in the course of her employment at the time of the shooting. The hearing commissioner further found, however, that Plummer's injury did not arise out of her employment and denied her claim. In September 1984, upon review before the full Commission, the hearing commissioner's decision was affirmed. Plummer did not appeal that ruling.

In February 1986, the trial court entered an order granting the plaintiff's motion to amend the motion for judgment to allege that she was an employee acting under the direction and control of defendant at the time of the injury. Subsequently, defendant filed a plea to the jurisdiction alleging plaintiff's exclusive remedy was under the Act, a plea of the statute of limitations, and a plea of former adjudication.

Initially, the trial court denied the several pleas. Upon reconsideration, the court sustained the plea to the jurisdiction and the plea of the statute of limitations. Plaintiff then filed a motion to amend the amended motion for judgment to reallege she was an independent contractor at the time of her injury. That motion was denied.

We awarded the plaintiff this appeal from the September 1986 final order dismissing the action. We limited the issues on appeal to the correctness of the court's ruling on the pleas. The view we take of the case requires discussion of only the jurisdictional plea.

The plaintiff argues the trial court erred in ruling that her exclusive remedy was under the Act. She contends the Industrial Commission's decision denying her claim on the ground the injury did not arise out of the employment amounted to a ruling that the Commission was without jurisdiction in the matter. Therefore, she argues, her common-law remedy remained available to her to be pursued in the present damage suit.

In *Griffith* v. *Raven Red Ash Coal Co.*, 179 Va. 790, 20 S.E.2d 530 (1942), the Industrial Commission had held that the death of an employee killed in a coal mine explosion did not arise out of and in the course of his employment and dismissed the personal representative's claim for benefits under the Act. Subsequently, the personal representative sued the employer, which was the

owner and operator of the mine, in negligence for wrongful death of the decedent. The plaintiff alleged that the decedent was an invitee upon the premises and that defendant had failed to keep the mine in a reasonably safe condition. The trial court dismissed the action, ruling that the matter was within the exclusive jurisdiction of the Industrial Commission. This Court reversed and remanded.

One of the issues the Court decided was "whether the . . . Act . . . bars an action at law for the injury or death of an employee due to the negligence of the employer, where such injury or death is not due to an accident arising out of and in the course of the employment and hence is not compensable under the Act." *Id.* at 795, 20 S.E.2d at 532-33. The Court referred to former section 12 of the Act, now Code § 65.1-40, which provides:

> "The rights and remedies herein granted to an employee when he and his employer have accepted the provisions of this Act respectively to pay and accept compensation on account of personal injury or death by accident shall exclude all other rights and remedies of such employee, his personal representative, parents, dependents or next of kin, at common law or otherwise, on account of such injury, loss of service or death."

The Court also cited former section 4 of the Act, now § 65.1-23 with a change not relevant here. The present section provides that every employer and employee "shall be conclusively presumed to have accepted the provisions of this Act respectively to pay and accept compensation for personal injury or death by accident arising out of and in the course of the employment and shall be bound thereby," unless prescribed notices are given.

Stating that these sections should be interpreted in the light of the purpose of the Act as a whole, the Court said that the Act provides a system of compensation to an employee or his dependents for injury or death arising out of and in the course of employment," without regard to fault as the cause of such injury or death." *Id.* at 796, 20 S.E.2d at 533. Noting that the Act should be construed liberally in favor of the worker, the Court stated, however, that the common law is not to be considered changed by statute unless the legislative intent is plainly manifested.

Therefore, the Court held, the purpose of section 12 was to exclude the common-law remedies of an employee *only* for injuries or death arising out of and in the course of the employment, "leaving unimpaired the common-law right of action for damages for the personal injury or death of the employee when such does not arise out of and in the course of the employment." *Id.* at 797, 20 S.E.2d at 533. The Court concluded that the Act "is exclusive in so far as it covers the field of industrial accidents, but no further. To the extent that the field is not touched by the statute, we think that the legislature intended that the employee's common-law remedies against his employer are to be preserved unimpaired." *Id.* at 798, 20 S.E.2d at 534.

Accordingly, the Court decided that when the Industrial Commission ruled the decedent's death did not arise out of and in the course of the employment, the Commission's jurisdiction of the matter ended, *id.* at 800, 20 S.E.2d at 534-35, and the plaintiff was free to pursue common-law remedies against the employer. *See Lloyd* v. *American Motor Inns, Inc.*, 231 Va. 269, 343 S.E.2d 68 (1986) (error to sustain plea of res judicata filed in tort action brought by employee against employer, when Industrial Commission previously had decided that accident did not arise out of and in the course of the employment).

█ In the present case, the Commission decided that the accident did not arise out of the claimant's employment, but found that it did arise in the course of such work. The question then becomes whether *Raven Red Ash* controls when one of these two requirements for payment of compensation is not met. There is no necessity for us to decide that question in this case. *See generally Beckham* v. *Estate of Brown*, 100 N.M. 1, 664 P.2d 1014 (Ct. App.), *writ quashed*, 100 N.M. 192, 668 P.2d 308 (1983) (wrongful death action against employer of decedents held not barred by the exclusivity provisions of workers' compensation statutes when their death did not occur in the course of their employment). We will assume without deciding that the rule of *Raven Red Ash* is applicable here and that this common-law action is not barred, the Industrial Commission's jurisdiction having ended when it determined that the accident did not arise out of the plaintiff's employment.

█ The defendant contends, however, that the Industrial Commission would have awarded the plaintiff compensation if the facts alleged in this common-law action had been presented to the

Commission. When the allegations of a plaintiff's motion for judgment against the employer, or the facts offered in support of the allegations, show that the plaintiff's remedy is under the Act, the plaintiff has no right to pursue her action at law. *Aistrop* v. *Blue Diamond Coal Co.*, 181 Va. 287, 24 S.E.2d 546 (1943). *See Raven Red Ash Coal Co.* v. *Griffith*, 181 Va. 911, 922-23, 27 S.E.2d 360, 364-65 (1943). Therefore, we must examine the record of the Commission hearing to determine whether the facts presented there were substantially the same as the factual allegations advanced in this common-law action. If they were, the Commission's ruling, which we have assumed was one of lack of jurisdiction, is conclusive and this action may proceed. However, if the facts advanced in this action were substantially different from those presented to the Commission and if the facts presented here show that the plaintiff's remedy was under the Act, she may not proceed at law. The validity of the jurisdictional plea under these circumstances is not determined by the actual denial of compensation upon facts presented to the Industrial Commission. Rather, the right of the plaintiff to obtain compensation based upon the allegations in the motion for judgment and supporting facts, if any, determines the viability of the plea.

Parenthetically, it should be observed that the normal position of the parties is reversed resulting in an unusual twist to the case. The employee is denying that she is entitled to workers' compensation, even though she affirmatively claimed entitlement to it before the Commission, in order to escape the exclusive remedy rule. The employer, which denied compensation was owed under the Act before the Commission, is now steadfastly asserting that the employee would be entitled to benefits under the Act based on her present allegations in order to take advantage of the exclusive remedy rule.

■ An examination of the transcript of the Commission hearing and a review of the motion for judgment along with the plaintiff's answers to interrogatories demonstrate that the plaintiff's exclusive remedy is under the Act.

The issues before the Commission were whether the claimant was an independent contractor and, alternatively, if she were found to be an employee, whether the accidental injury arose out of and in the course of her employment. As the deputy commissioner stated in his opinion, the principal disputes between the parties concerned the claimant's status at the time of the shooting

and "if the claimant is found to be an employee, whether sufficient additional risk attributable to the employment exists to bring the gunshot assault within the ambit of that employment."

We will not dwell on the evidence offered to the Commission on the status question. The trial court based its decision on the amended motion for judgment which alleged the plaintiff was an employee, consistent with the Commission's finding.

The remainder of the claimant's evidence before the Commission, aside from facts relating to the nature of her injuries, dealt with her employment duties as a newspaper carrier, both motor and foot. The only evidence about the risk attendant to her employment was presented in connection with the reason for her being at the location of the shooting when it occurred.

The claimant testified that prior to the night of the incident, she had experienced difficulty in obtaining newspapers in a timely manner from the employer's loading dock for delivery on her morning routes. Part of the problem, according to the claimant, was that she was the victim of discrimination because of her sex and race. The employer, after consideration of the complaint, established a separate and exclusive pick-up procedure for the claimant. She then received her newspapers at a site several hundred yards away from the regular pick-up point for other carriers. This site was in the parking lot of an office park in front of a locked building.

During the day before the incident, because the claimant was experiencing motor trouble with her automobile, she obtained from her supervisor a specific time when her newspapers were to be delivered to the site so she could avoid having to "turn off" and restart the motor. She appeared at the scene at the appointed time and, while she was sitting in her vehicle with the motor idling, two men approached the vehicle. As the claimant moved the vehicle, one of the men fired a shot from a "huge gun" saying, " 'give me your purse,' " or similar words. The shot penetrated the rear window of the automobile and struck the claimant in the shoulder.

■ The claimant denied that she previously had experienced at the site any "problems with anybody attempting to get you or to assault you or do anything of that sort." The circulation manager for the employer testified that prior to the assault in question, "I was not aware of any sort of . . . adverse incident that had taken place" at that location.

Based on this evidence, the deputy commissioner ruled that the shooting "was an arbitrary and capricious act by an unknown assailant who just happened upon the claimant's vehicle." The full Commission held that the "evidence . . . does not establish a relationship between the employment and the risk of injury by gunshot" and "there is no evidence which in any way relates the assault to her occupation." The hearing commissioner emphasized there was "no evidence in the record that claimant was in a high crime area or that the employer had placed the claimant in a precarious position."

■ Turning to the factual allegations of the common-law action, we observe that the plaintiff presents an entirely different picture of the circumstances surrounding the claim. The motion for judgment, as amended, alleged the defendant "was guilty of negligence for failing to provide the plaintiff with a safe place to work and for sending her to work without taking reasonable measures to protect her." The allegations directed to the owners of the office park were that the plaintiff was an invitee upon the property, that the owners negligently exposed her "to an unreasonable risk," that they failed to "exercise reasonable care to discover harmful acts of third persons," and they failed to give her adequate warning to enable her "to avoid the harm from the acts of third persons."

The allegations against the employer were particularized in the plaintiff's answers to interrogatories. Among other assertions, the plaintiff charged that she "constantly" expressed to defendant's other employees her "deep-seeded [sic] concern . . . about waiting to pick up papers in the deserted, dimly lit parking lot." She stated that defendant "created a dangerous situation" by leaving her at the site "for extended periods of time waiting for the papers." She asserted that "security measures should have been provided" at the scene.

Continuing, the plaintiff alleged that "another carrier had already had problems with molestation and hassling by unknown third parties which had been reported to the Circulation Manager who in turn made the complaint to [a superior] who in turn agreed with the danger expressed by the Supervisor of Carriers and agreed that he would get something done to stop the pick up of papers" at the site in question. The plaintiff further stated that defendant "knew of dangerous conditions in general for its carriers and particularly for women and it also had knowledge of previ-

ous problems to its employee or employees [at the scene] prior to the attack upon the plaintiff."

■ Upon proof of the foregoing facts, the plaintiff would have been entitled to an award of compensation under the Act. These facts demonstrate that this accidental injury arose in the course of her employment and, more importantly for the purposes of this case, arose out of her employment. Here, the plaintiff alleges that the employer had notice of a dangerous condition and failed to protect the employee from such condition.

■ This case is similar to *Lynchburg Steam Bakery* v. *Garrett*, 161 Va. 517, 171 S.E. 493 (1933). There, the claimant lost vision in one eye when a trespasser entered the work premises and shot the claimant with a gravel shooter. The employer knew that the trespasser was present, that he had in his possession an instrumentality which might cause injury, and that he threatened the claimant. Nevertheless, the employer failed to eject the assailant. In affirming an award of compensation by the Commission, the Court said that the employer owed the employee a duty to provide a safe place to work and that as long as the assailant remained on the premises, armed with a dangerous instrumentality, the hazards of the employment were increased. The Court, in deciding the accident arose out of the employment, held that "when an employer knows of a hazard to which the employee is subjected, it is his duty to remove the hazard or in some other way to afford adequate protection to his employee." *Id.* at 521, 171 S.E. at 494-95.

■ "An accident arises out of the employment if there is a causal connection between the claimant's injury and the conditions under which the employer requires the work to be performed." *R & T Investments* v. *Johns*, 228 Va. 249, 252, 321 S.E.2d 287, 289 (1984). Quoting Larson's treatise on the subject, we said in *R & T Investments* that the "requisite nexus in an assault case is supplied if there is 'a showing that the probability of assault was augmented either because of the peculiar character of the claimant's job or because of the special liability to assault associated with the environment in which he must work.' " *Id.* at 253, 321 S.E.2d at 289. The plaintiff's allegations in the present case bring her claim squarely within these principles.

■ Accordingly, we hold that the trial court correctly decided that the plaintiff's exclusive remedy was under the Act and prop-

erly sustained defendant's plea to the jurisdiction. Thus, the order appealed from will be

*Affirmed.*