RICHMOND NEWSPAPERS, INC.

V.

RICKEY A. HAZELWOOD

Record No. 940913

April 21, 1995

Present: All the Justices

*Alexander Wellford (Geunet Beshah-Tapscott; Christian, Barton, Epps, Brent & Chappell*, on briefs), for appellant.

*Carolyn P. Carpenter (Eileen N. Wagner; Carpenter, Woodward & Wagner*, on brief), for appellee.

CHIEF JUSTICE CARRICO delivered the opinion of the Court.

The sole question in this case is whether an employee's claim against his employer, asserted in a common law action for injury resulting from goosing by a fellow employee,[1] is barred by the exclusivity provision contained in Code § 65.1-40, part of the Virginia Workers' Compensation Act (the Act).[2] Answering the question in the negative, we will affirm the trial court's approval of a jury verdict favorable to the employee.

---

[1] To "goose" means "to poke or dig (a person) in some sensitive spot; *esp*: to poke (a person) between buttocks with an upward thrust of a finger or hand from the rear." *Webster's Third New International Dictionary* 979 (1981).

[2] Code § 65.1-40 is now § 65.2-307 as a result of a revision of the Virginia Workers' Compensation Act in 1991.

In a two-count motion for judgment, the employee, Rickey A. Hazelwood (Hazelwood), sought both compensatory and punitive damages against his employer, Richmond Newspapers, Inc. (Richmond Newspapers). Count I alleged a claim based upon several instances of assault and battery committed upon Hazelwood by J. Bruce Mabe, a fellow employee not named as a party defendant. Count II alleged a claim based upon Richmond Newspapers' negligence in its hiring and retention of "an unfit person in the work place."

Richmond Newspapers filed grounds of defense denying the allegations of the motion for judgment. Richmond Newspapers also filed a motion for summary judgment on the ground that Hazelwood's exclusive remedy was under the Act. After argument, the trial court denied the motion for summary judgment.

The record shows that Hazelwood was employed as a journeyman pressman in the pressroom of Richmond Newspapers. Mabe was assistant night foreman and Hazelwood's immediate supervisor. Hazelwood testified that on five different occasions in the course of his employment, Mabe grabbed him in the buttocks or in the genital area and that, on one occasion, occurring September 14, 1990, Mabe's finger penetrated Hazelwood's body.

Hazelwood testified further that, as a result of the September 14 incident, he was "embarrassed and humiliated," his "hair was standing up," his "chest felt really prickly," and his "knees were rubbery." He also testified that he suffered the same reaction on the other occasions when Mabe goosed him.

While the goosing incidents caused Hazelwood no physical injury, they caused him emotional problems and brought back the memory of a sexual assault he had experienced during childhood. As a result, Hazelwood suffered depression and post-traumatic stress disorder, for which he sought psychological treatment.

Mabe admitted the goosing incident of September 14, 1990. On the strength of this admission, the trial court instructed the jury that, while acting as an employee of Richmond Newspapers and within the scope of his employment, Mabe committed a battery upon Hazelwood on September 14, 1990. The court left it to the jury to determine whether Mabe committed other batteries upon Hazelwood.

The jury returned a verdict in favor of Hazelwood for $40,000 in compensatory damages and $100,000 in punitive damages. Richmond Newspapers moved to set the verdict aside on the

ground Hazelwood's exclusive remedy was under the Act. The trial court denied the motion and entered judgment on the verdict.

In denying the motion to set aside the verdict, the trial court held that Hazelwood's injury arose out of and in the course of his employment. The court also held, however, that Hazelwood did not suffer an injury by accident within the meaning of the Act and, therefore, that Hazelwood's claim was not barred by the exclusivity provision of the Act.

In its assignments of error, Richmond Newspapers challenges the trial court's ruling that Hazelwood did not suffer an injury by accident. In an assignment of cross-error, Hazelwood charges that the trial court erred in holding his injury arose out of his employment.

 An injury is subject to the exclusivity provision of the Act if it is the result of an accident and arises out of and in the course of the employment. Code § 65.1-7 (now § 65.2-101); *see Baggett & Meador Cos. v. Dillon*, 219 Va. 633, 636, 248 S.E.2d 819, 821 (1978). In the present case, we will assume, without deciding, that Hazelwood's injury was the result of an accident. It is conceded that the injury arose in the course of the employment. Hence, the dispositive question becomes: Did the injury arise out of the employment? As indicated previously, this is the question presented by Hazelwood's assignment of cross-error.

 On brief, Richmond Newspapers notes that, in determining whether an injury arises out of the employment, this Court applies the "actual risk" test and frequently quotes from *Bradshaw v. Aronovitch*, 170 Va. 329, 196 S.E. 684 (1938). There, it is stated that

if the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises 'out of' the employment. *But [the applicable test] excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause and which comes from a hazard to which the workmen would have been equally exposed apart from the employment.* The causative danger must be peculiar to the work and not common to the neighborhood. It must be incidental to the character of the business and not independent of the relation of master

and servant. It need not have been foreseen or . . . expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence.

170 Va. at 335, 196 S.E. at 686 (quoting *In re McNicol*, 102 N.E. 697, 697 (Mass. 1913)) (emphasis added).

At trial, in an effort to establish that goosing was an actual risk of Hazelwood's employment, Richmond Newspapers submitted evidence showing that the practice of goosing is prevalent in its pressroom, that the practice has existed for more than forty years, and that it exists in the pressrooms of newspapers in other parts of the country. Richmond Newspapers points out that, in addition to Mabe, "the gooser," twelve pressmen testified "about the risk of being goosed in the . . . pressroom."

On appeal, Richmond Newspapers argues that goosing "would appear to be an activity engaged in by pressmen, perhaps as a means to break the tension of the 'heat of battle' created by the job." Because the evidence shows that the activity was limited to the pressroom itself, Richmond Newspapers maintains that the activity was " 'peculiar to the work and not common to the neighborhood.' " Hence, Richmond Newspapers concludes, the trial court correctly held that " 'the risk to a pressman such as [Hazelwood] of being goosed in the pressroom was an actual risk of his employment' " and, therefore, that his injury arose out of his employment.

■ Richmond Newspapers, however, fails to respond to an important point of law made on brief by the plaintiff, a point that is well supported by several decisions of this Court involving assaults upon employees. If the assault is personal to the employee and not directed against him as an employee or because of his employment, the injury does not arise out of the employment. *Reamer v. National Service Industries*, 237 Va. 466, 471, 377 S.E.2d 627, 630 (1989); *Metcalf v. A. M. Express Moving Systems, Inc.*, 230 Va. 464, 470, 339 S.E.2d 177, 181 (1986); *City of Richmond v. Braxton*, 230 Va. 161, 165, 335 S.E.2d 259, 262 (1985); *see also Hopson v. Hungerford Coal Co.*, 187 Va. 299, 305-06, 46 S.E.2d 392, 395 (1948); *A. N. Campbell & Co. v. Messenger*, 171 Va. 374, 377-78, 199 S.E. 511, 513 (1938); *Continental Life Ins. Co. v. Gough*, 161 Va. 755, 759-60, 172 S.E. 264, 266 (1934).

*City of Richmond v. Braxton, supra,* is on point. There, the claimant was employed by the city as a ticket seller in the box office of a municipally owned theater. While the claimant was making a telephone call, her supervisor grabbed her and began fondling her breasts. The episode was interrupted when a customer appeared at the box office window. After the customer left, the supervisor attempted to grab the claimant again, but she broke away and ran out of the box office. The supervisor displayed sexually oriented literature in his office and regularly discussed sexual topics with another female employee in the box office and showed her pictures from *Playboy* magazine.

Finding that the claimant's injury arose out of her employment, the Industrial Commission awarded her compensation. We reversed. We said the case was controlled by the language from *Bradshaw v. Aronovitch*, italicized above, that " 'excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause and which comes from a hazard to which the [worker] would have been equally exposed apart from the employment.' " 230 Va. at 164, 335 S.E.2d at 261. Quoting with approval from the dissenting opinion of one of the Industrial Commission members, we stated that " 'the assault [upon the claimant was] of a personal nature as it was not directed against the employee as part of the employment relationship and was in no way in furtherance of the employer's business.' " *Id.* at 165, 335 S.E.2d at 262.

We think *City of Richmond v. Braxton* controls the outcome of the present case. Here, there was evidence that Mabe goosed fellow workers because he considered them his friends. Indeed, friendship seems to have been the motivation for the pressroom goosing. Clifford Wayne Brown, an assistant manager in the pressroom who said he had engaged in goosing before he joined management, testified that he did not know "of anybody that ha[d] goosed anybody that didn't consider them a friend."

Mabe testified as a witness for Hazelwood. When asked the purpose of the pressroom goosing, Mabe responded: "Everybody thought it was a big joke back then. It was like a big locker room, a bunch of guys working together." When asked specifically why he goosed Hazelwood in the incident occurring on September 14, 1990, Mabe replied: "I considered Mr. Hazelwood as a friend back then. I didn't have any problems with him. He got along. He joked. He kidded around with everybody else." Mabe also testified

that he goosed pressmen other than Hazelwood, stating that "it was more or less play down there. I was passing idle time with a bunch of men working together."

Howell Taylor Bear, III, had worked in the pressroom for six years. He testified that no one had ever attempted to goose him. He was asked whether the work of a pressman had anything to do with goosing and whether goosing benefitted the work of a pressman. He replied in the negative to both questions.

■ This evidence, which was undisputed, shows clearly that the goosing in Richmond Newspapers' pressroom was of a personal nature and not directed against the recipients as employees or in furtherance of the employer's business.[3] Hence, Hazelwood's injury, suffered as a result of the goosing, did not arise out of his employment.[4] For this reason, we will sustain Hazelwood's assignment of cross-error, uphold the trial court's denial of Richmond Newspapers' motion to set aside the jury verdict, and affirm the judgment appealed from.

*Affirmed.*

---

[3] The only semblance of benefit to the employer from goosing in the pressroom which Richmond Newspapers offers is a statement on brief that goosing "would appear to be an activity engaged in by pressmen, perhaps as a means to break the tension of the 'heat of battle' created by the job." However, we consider this an insufficient basis for finding that the goosing was in furtherance of the employer's business.

[4] *Lynchburg Steam Bakery v. Garrett*, 161 Va. 517, 171 S.E. 493 (1933), cited by the trial court as authority for its finding that Hazelwood's injury arose out of his employment, did not involve an assault personal to the employee and, hence, is inapposite here. For the same reason, *Plummer v. Landmark Communications, Inc.*, 235 Va. 78, 366 S.E.2d 73 (1988), which cites *Lynchburg Steam Bakery*, is also inapposite.