UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Decker, Judges AtLee and Friedman
Argued at Fredericksburg, Virginia

BRENDA LEE TAYLOR,
 ADMINISTRATOR OF THE ESTATE
 OF RICKY EL TAYLOR, DECEASED

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 1042-22-4                  JUDGE FRANK K. FRIEDMAN
                                                        AUGUST 8, 2023

DAVID POSEY, ET Al.

              FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                         Michael F. Devine, Judge

         Alan Shachter for appellant.

         John H. Carstens (Jordan Coyne LLP, on brief), for appellees.


      In this appeal, we are asked to review the applicability of Virginia's Workers'

Compensation Act to a claim that an employer's negligence in operating a retail grocery store

resulted in a vulnerable employee being exposed to the COVID-19 virus at work and ultimately

succumbing to it.

      Appellant, Brenda Lee Taylor, as the administrator of the estate of her husband

("administrator"), filed a complaint alleging wrongful death in the Circuit Court for Fairfax

County on behalf of the estate of her deceased husband, Ricky Taylor ("Taylor"), against his

employer, Giant of Maryland, LLC ("Giant") and David Posey, the store manager where Taylor

worked.  She alleged that her husband served as a grocery manager and that he contracted a fatal

case of COVID-19 while working at Giant.  In response, the defendants filed a plea in bar

---

[*] This opinion is not designated for publication.  See Code § 17.1-413(A).

arguing that the circuit court lacked subject matter jurisdiction over the case because, under Code § 65.2-307, the administrator's exclusive remedy was governed by the Workers' Compensation Act. The circuit court agreed with the employer and held that the claims fell within the exclusive purview of workers' compensation. Accordingly, the court sustained the employer's plea in bar and dismissed the complaint.

BACKGROUND

In March, 2020, the Governor deemed retail grocery stores to be essential businesses, allowing them to continue to operate despite the COVID-19 pandemic that was expanding across the Commonwealth. Exec. Ord. No. 53 (Mar. 23, 2020). Accordingly, as a retail grocery store worker, Taylor continued to perform his duties at Giant; in April, 2020 he was stricken with COVID-19. The following month he died from complications arising from the disease.

The administrator filed a complaint against Giant and its employee, Posey, for wrongful death[1]; the complaint alleges that Taylor was employed by Giant as a grocery manager and due to underlying medical conditions, he was "highly vulnerable to catching COVID-19." It further alleges that Giant failed to provide Taylor with a mask and permitted customers to "wander through the store without masks and failed to provide or enforce social distancing." Taylor, in fact, was "reprimanded" for directing customers to wear masks and comply with social distancing. The complaint states that Taylor's "doctor instructed him to wear a mask at work" due to his vulnerability; "[w]hen he did so, [Giant] ordered him to remove it." Moreover, "[a]fter producing a doctor's note recommending . . . Taylor wear a mask, [Giant] told him he could only wear the mask in a back room or be transferred." The complaint further asserts that Giant failed to properly sanitize the store and failed to monitor employees for exposure to COVID-19. The complaint alleges that Taylor quarantined at home when he was not working

---

[1] Posey and Giant will be referred to collectively as "Giant" or "the employer."

and that he contracted COVID-19 at his workplace, was hospitalized, and died from septic shock, acute respiratory distress syndrome, and COVID-19 on May 24, 2020.

Giant filed a plea in bar arguing that the circuit court lacked subject matter jurisdiction over the case because, under Code § 65.2-307, the administrator's exclusive remedy was governed by the Workers' Compensation Act. No evidence was introduced in support of the plea; Giant's plea instead asserted that the allegations in the complaint itself established the workers' compensation bar. The circuit court sustained the plea in bar and dismissed the complaint. This appeal followed.

STANDARD OF REVIEW

"A plea in bar asserts a single issue, which, if proved, creates a bar to a plaintiff's recovery." *Massenburg v. City of Petersburg*, 298 Va. 212, 216 (2019) (quoting *Hawthorne v. VanMarter*, 279 Va. 566, 577 (2010)). "The party asserting the plea in bar bears the burden of proof." *Id.* "[W]here no evidence is taken in support of a plea in bar, the trial court, and the appellate court upon review, consider solely the pleadings in resolving the issue presented. In doing so, the facts stated in the plaintiff's [complaint] are deemed true." *Id.* (quoting *Lostrangio v. Laingford*, 261 Va. 495, 497 (2001)). "This approach results in functionally de novo review of the trial court's judgment." *Id.*

ANALYSIS

The Exclusivity Provision of the Workers' Compensation Act

The Workers' Compensation Act provides, in pertinent part, that the "rights and remedies" within it "granted to an employee when his employer and he have accepted the provisions of this title respectively to pay and accept compensation on account of injury or death by accident shall exclude all other rights and remedies of such employee" or "his personal representative . . . on account of . . . injury . . . or death." Code § 65.2-307(A). Thus, the Act

- 3 -

provides the sole remedy against employers for employees injured within its scope. As the

Supreme Court explained in *Lopez v. Intercept Youth Services, Inc.*, 300 Va. 190, 196 (2021), the

Workers' Compensation Act involves a legislative balancing of conflicting interests. The Act

> "reflects a legislative 'quid pro quo' that gave workers the right to
> assert no-fault liability against their employers (a right that they
> had never possessed) and took from them the right to sue their
> employers in tort for negligence (a right that they had possessed
> under the common law)." *Jeffreys v. Uninsured Emp.'s Fund*, 297
> Va. 82, 93 (2019); *see also Butler v. Southern States Coop., Inc.*,
> 270 Va. 459, 465 (2005). To be effective, the Act must be
> interpreted to maintain that delicate balance of competing policies
> implicit in this "societal exchange," *Roller v. Basic Constr. Co.*,
> 238 Va. 321, 327 (1989). "A view of the Act's coverage that is too
> broad would authorize an award of compensation benefits but
> would bar a tort recovery, and a view that is too narrow would
> authorize a tort recovery but would bar an award of compensation
> benefits." *Jeffreys*, 297 Va. at 93.

*Lopez*, 300 Va. at 196. To the extent a worker is entitled to coverage under the Act, workers'

compensation provides the exclusive remedy for the employee against the employer and the

worker is foreclosed from suing his employer in tort. *See Hilton v. Martin*, 275 Va. 176, 180

(2008).

The question in this case is whether Taylor's death falls within the scope of the Act and

thereby forecloses the administrator's wrongful death action. *See Gibbs v. Newport News

Shipbuilding and Drydock Co.*, 284 Va. 677, 683 (2012) ("Lacking any remedy under the Act"

the "estate is unaffected by" the "exclusivity bar."). Determination of whether a tort claim is

encompassed by the Act requires analysis of whether the allegations meet the requirements of a

workers' compensation claim as set forth in Code § 65.2-307(A).[2] "To the extent that an

---

[2] *See Lopez*, 300 Va. at 200 (analyzing whether the employee's murder arose out of her
employment to decide whether the negligence claim was preempted by the Act); *Middlekauff v.
Allstate Ins. Co.*, 247 Va. 150, 152 (1994) (considering whether the employee's claim for
emotional distress met the statute's definition of "injury by accident" in deciding that the action
was not barred by the Act).

- 4 -

employee's injury does not meet the statutory tests for coverage under the Act, the employee's common-law remedies are preserved unimpaired." *Hilton*, 275 Va. at 180; *see Giordano v. McBar Indus., Inc.*, 284 Va. 259, 264 (2012).

Whether an employee's injury falls within the purview of the Act is a different question than whether the claim is compensable under the Act. *Giordano*, 284 Va. at 264. In other words, courts analyzing this question are not asked to determine whether the injury actually merits a workers' compensation award, but instead must consider whether the facts, as alleged, would demonstrate a legitimate workers' compensation claim (for "injury," "occupational disease," or compensable ordinary disease of life as those terms are defined by the Act)—such that the exclusivity bar would apply. *See, e.g.*, *Lopez*, 300 Va. at 199-200.

Relevant Factors in Analyzing Whether the Claims Raised in the Administrator's Complaint Fall Within the Purview of the Workers' Compensation Act

Under definitions set out in the Workers' Compensation Act, Code § 65.2-101, "[i]njury" means "only injury by accident arising out of and in the course of the employment or occupational disease." This appeal focuses on whether Taylor suffered a disease that should be treated as a covered illness under the Act. The term "occupational disease" typically "means a disease arising out of and in the course of employment" but does not include an "ordinary disease of life to which the general public is exposed outside of the employment." Code §§ 65.2-400(A), [3] -401. The administrator contends that COVID-19 is an ordinary disease of

---

[3] Code § 65.2-400 defines "Occupational disease" as follows:

> A. As used in this title, unless the context clearly indicates otherwise, the term "occupational disease" means a disease arising out of and in the course of employment, but not an ordinary disease of life to which the general public is exposed outside of the employment.

- 5 -

life—and nothing in her pleadings suggests that Taylor contracted an "occupational disease."

Nonetheless, even an "ordinary disease of life" can be treated as a covered "occupational

disease" under the Act in appropriate circumstances.[4]  For example, asthma might not generally

---

> B.  A disease shall be deemed to arise out of the employment only if there is apparent to the rational mind, upon consideration of all the circumstances:
>
> 1.  A direct causal connection between the conditions under which work is performed and the occupational disease;
>
> 2.  It can be seen to have followed as a natural incident of the work as a result of the exposure occasioned by the nature of the employment;
>
> 3.  It can be fairly traced to the employment as the proximate cause;
>
> 4.  It is neither a disease to which an employee may have had substantial exposure outside of the employment, nor any condition of the neck, back or spinal column;
>
> 5.  It is incidental to the character of the business and not independent of the relation of employer and employee; and
>
> 6.  It had its origin in a risk connected with the employment and flowed from that source as a natural consequence, though it need not have been foreseen or expected before its contraction.
>
> C.  Hearing loss and the condition of carpal tunnel syndrome are not occupational diseases but are ordinary diseases of life as defined in § 65.2-401.

[4] Code § 65.2-401 sets out when an "ordinary disease of life" can receive coverage under the Act:

> An ordinary disease of life to which the general public is exposed outside of the employment may be treated as an occupational disease for purposes of this title if each of the following elements is established by clear and convincing evidence, (not a mere probability):
>
> 1.  That the disease exists and arose out of and in the course of employment as provided in § 65.2-400 with respect to occupational

- 6 -

be considered an occupational disease; however, if a worker is subjected to a release of noxious fumes which triggers an asthma attack, the injury could be covered by workers' compensation. *Joy v. Arlington (County of) Sch. Bd.*, VWC No. 211-98-10 (Va. Workers' Comp. Comm'n Dec. 29, 2004); *see also Island Creek Coal Co. v. Breeding*, 6 Va. App. 1 (1988) (finding mine worker's hearing loss to be a compensable ordinary disease of life).

Under Code § 65.2-401, for an ordinary disease of life to qualify as a compensable disease, the disease must have arisen "out of and in the course of employment" and, in addition, it must "follow[] as an incident of occupational disease," be an "infectious or contagious disease contracted" through employment in health care or as emergency rescue personnel, or be "characteristic of the employment and . . . caused by conditions peculiar to such employment." Code § 65.2-401(1), (2).  Here, the administrator argues that her claims related to COVID-19 do not fit within any of these factors listed in Code § 65.2-401.

Giant's argument below, and on appeal, was tied principally to the General Assembly's 2021 amendment of Code § 65.2-402.1 which stated that health care workers, firefighters, law enforcement officers, and correctional officers would be entitled to a presumption that their

---

diseases and did not result from causes outside of the employment, and

2.  That one of the following exists:

a.  It follows as an incident of occupational disease as defined in this title; or

b.  It is an infectious or contagious disease contracted in the course of one's employment in a hospital or sanitarium or laboratory or nursing home as defined in § 32.1-123, or while otherwise engaged in the direct delivery of health care, or in the course of employment as emergency rescue personnel and those volunteer emergency rescue personnel referred to in § 65.2-101; or

c.  It is characteristic of the employment and was caused by conditions peculiar to such employment.

COVID-19 illnesses were occupational diseases suffered in the line of duty. Giant did not argue that Taylor's illness somehow fit within the statutory parameters of an occupational disease; instead, Giant contended that it would be illogical for some COVID-19 cases to be covered by workers' compensation, while others were not.[5] Giant argued that, based on the presumption in Code § 65.2-402.1, all work-related COVID-19 cases properly fall under the workers' compensation bar. Giant also reasoned that because any ordinary disease of life can be a covered disease under Code § 65.2-401, the administrator's recognition that COVID-19 is an ordinary disease of life automatically triggered the Act's exclusivity provisions.

Giant's "all or nothing" logic with respect to coverage for COVID-19 cases is generally inconsistent with Virginia workers' compensation analysis and is particularly unavailing in light of *Lopez*, 300 Va. at 200, and *Middlekauff*, 247 Va. at 152. In both cases, the Supreme Court considered the applicability of the exclusivity provision by undertaking a fact-specific analysis. In *Lopez*, the Supreme Court of Virginia analyzed whether the employee's murder arose out of her employment. While being murdered on the job could be wholly unrelated to the employment, in *Lopez*, where the employee-victim was a youth counselor at a residential home working with violent clients with behavioral issues, her death was found to arise out of her employment and was covered under the Act. *Lopez*, 300 Va. at 200. In *Middlekauff*, the Court

_____

[5] The Act, as amended by the General Assembly, provides that COVID-19 is presumptively an occupational disease for health care workers and law enforcement officers, but the employee here does not fall into these categories. Code § 65.2-402.1(B); 2021 Va. Acts Spec. Sess. I chs. 507, 526, 547. Like health care workers and first responders, the Governor of Virginia deemed retail grocery stores to be essential businesses allowed to continue to operate throughout the early stages of the pandemic. *See, e.g.*, Exec. Ord. No. 53 (Mar. 23, 2020). Again, however, the legislature chose not to extend the presumption afforded to health care workers and first responders in Code § 65.2-402.1(B) to retail grocery store employees. *See, e.g.*, Advisory Op. Va. Att'y Gen. to Hon. Ken Stolle, Sheriff City of Va. Beach (May 22, 2020) (the COVID-19 amendment to the Act reflects the legislature's intent to extend a presumption benefiting firefighters, as a limited class of occupations, where the nature of their duties places them at far greater risk of contracting COVID-19 than the general public).

considered whether the employee's claim for intentional infliction of emotional distress from harassment met the statute's definition of "injury by accident." Here, again, the Court did not make an "all or nothing" evaluation that all emotional distress claims are covered by the Act (or left uncovered). Instead, the Court conducted an analysis of the complaint, parsing out whether the specific harm alleged constituted an "injury by accident" as contemplated by the Act. *Middlekauff*, 247 Va. at 153 ("she alleges a 'pattern of abusive behavior,' continuing over an extended period of time"; this cannot be construed as an "injury by accident"). *See also Snead v. Harbaugh*, 241 Va. 524, 527-29 (1991) (with respect to a defamation claim, finding pleadings sought only damages for loss of reputation—not for emotional damage; injury to reputation is not injury to the person and is not covered by the exclusivity bar).

In both *Lopez* and *Middlekauff*, the Court considered the particular facts alleged in the pleadings at length to reach its conclusion. It did not categorically hold that the exclusivity provision universally applied to all on-the-job murders or claims of emotional distress; it made a fact-specific analysis.[6] In short, the case law does not support the employer's categorical approach to COVID-19 and, instead, instructs courts to undertake a fact-specific analysis of the complaint to determine whether the exclusivity provision should apply. While we reject the notion that all COVID-19 claims fall within the reach of the workers' compensation bar, this does not end the inquiry here.

---

[6] *Lopez* offers an instructive discussion on the question of whether on-the-job assaults are covered by the Workers' Compensation Act. *Lopez* observes that in cases where the assault did not arise out of the employment, coverage was denied. *See Hill City Trucking, Inc. v. Christian*, 238 Va. 735 (1989) (incident not covered where longhaul trucker is randomly robbed); *Baggett Transp. Co. of Birmingham v. Dillon*, 219 Va. 633, 638 (1978) (random violence from unknown assailant not work related). Yet in *Plummer v. Landmark Communications, Inc.*, 235 Va. 78 (1988), an assault on an employee was covered where a newspaper carrier was sent to a deserted, dimly lit area at 2:00 a.m. to pick up newspapers where she was attacked. Again, the fact specific nature of the coverage analysis is a consistent theme.

<u>Applicability of the Workers' Compensation Bar to this Record</u>

The Court is left to decide whether the complaint alleges facts that would support a finding that Taylor's condition qualified as a covered disease under Code § 65.2-401. Again, an "ordinary disease of life" arising out of the employment can constitute a covered disease for purposes of the Act only if it meets one of three criteria under Code § 65.2-401(2): first, if the disease "follows as an incident of occupational disease"; second, if it is an "infectious or contagious disease contracted" through employment in health care or as emergency rescue personnel; or, third, if it is "characteristic of the employment and . . . caused by conditions peculiar to such employment." *See Ingersoll-Rand Co. v. Musick*, 7 Va. App. 684, 687 (1989) (claimant meets the test where his disease was the result of industrial noise which was a distinctive feature of his work environment).

Here, we conclude based on the pleadings that the facts, as alleged, do make out a claim that would support a legitimate workers' compensation recovery such that the exclusivity bar does apply. We reach this conclusion based on the third prong of Code § 65.2-401(2). The language of this section requiring the disease to be "characteristic of the employment" and "caused by conditions peculiar to such employment" has been construed somewhat broadly. In *Musick*, this Court specifically rejected the employer's suggestion that this language was meant to foreclose recoveries for ordinary diseases except in the most egregious circumstances. 7 Va. App. at 686. The Court explained:

> We interpret the act as providing that an employee has a compensable disease when he proves that his disease was, in fact, developed at work as a result of the usual conditions to which he was exposed by his employment. If the evidence shows a recognizable link between the disease and some distinctive feature of the claimant's job or work environment, we believe, if other qualifications are met, the legislature intended recovery. Accordingly, we define the phrase "peculiar to the employment" to mean unique to the conditions in which the claimant actually worked, not the normal working conditions to which other workers

> in the same occupation, or other workers in the same industry, were exposed.

*Id.* at 687. The facts alleged here are that "[a]fter the outbreak of the COVID-19 pandemic, Mr. Taylor remained quarantined at home with his wife, except for when he was at work at Giant." The complaint asserts that, as a condition of employment, Taylor was surrounded by unmasked customers and co-workers who were not socially distancing. He was prohibited from wearing a mask as he encountered these customers and co-workers as part of his job. He was, in fact, reprimanded for suggesting to customers that they wear masks and observe social distancing protocols. Even after he provided a doctor's note supporting his need to wear a mask when dealing with the public, Giant balked. Taylor was not only left to work in these perilous conditions, but he was actively prevented from taking action himself to reduce the risk.

Ultimately, at the core of the administrator's complaint she alleges that, based on Giant's actions, Taylor was left unmasked and unprotected in a closed space where he was forced to be in contact with a steady stream of infected people who were, themselves, unmasked and failing to observe social distancing. In our view this does present a "recognizable link" between the disease and the claimant's work environment. *Musick*, 7 Va. App. at 687; *see also Fairfax Cnty. v. Espinola*, 11 Va. App. 126 (1990) (exposure to hepatitis); *Mottram v. Fairfax Cnty. Fire and Rescue Dept.*, 263 Va. 365, 375 (2002) (first responder's PTSD is an occupational disease under the facts established).

Moreover, Giant allegedly subjected Taylor to these conditions despite his doctor's note and knowledge of his vulnerabilities. As the Supreme Court observed in *Lopez*, "[a]n employer's refusal to protect employees from a known, dangerous condition on the premises can also create a peculiar risk under some circumstances." 300 Va. at 198 (citing *Plummer v. Landmark Commc'ns, Inc.*, 235 Va. 78, 86-88 (1988); *Lynchburg Steam Bakery, Inc. v. Garrett*, 161 Va. 517, 519-23 (1933)).

The case before us involves a long list of workplace conditions that, taken as true, were alleged to be the direct cause of Taylor's illness and death. His illness can be seen, if the administrator's allegations are proved, to have followed as a natural incident of his work as a result of the exposure occasioned by his work conditions. Accordingly, we agree with the circuit court that the exclusivity bar of the Workers' Compensation Act applies to this claim. Thus, the circuit court properly dismissed the administrator's complaint.

CONCLUSION

The specific facts alleged in the complaint here support a finding that Taylor's COVID-19 was a covered disease under Code § 65.2-401(2). Analysis of the administrator's claims in this case compels application of the Act's exclusivity provision and dismissal of the wrongful death claim. The circuit court's ruling granting Giant's plea in bar and dismissing the action is affirmed.

*Affirmed.*