PRESENT: All the Justices

GLADYS LOPEZ, AS PERSONAL
REPRESENTATIVE OF THE ESTATE
OF LIZETH LOPEZ

                                      OPINION BY
v. Record No. 191545                 JUSTICE D. ARTHUR KELSEY
                                      AUGUST 5, 2021

INTERCEPT YOUTH SERVICES, INC.

FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
Judge Angela L. Horan

The circuit court granted a plea in bar and dismissed a complaint alleging that an employer operating a residential program for at-risk youth had negligently failed to protect an employee who had been murdered by one of the residents. The court held that pursuant to Code § 65.2-307(A), the Virginia Workers' Compensation Act provided the exclusive remedy for the employee's death. We agree and affirm.

I.

In 2016, Lizeth Lopez worked as an Evening Support Counselor for Intercept Youth Services, Inc. ("Intercept"), which owns and operates a YouthQuest Independent Living program for at-risk youth. At the time, approximately 98% of the residents had mental-health diagnoses, and they had all been referred to the program from psychiatric hospitals, group homes, therapeutic foster homes, or regular foster homes. Trained in behavior management and conflict de-escalation, Lopez's duties included familiarizing herself with the charts of all residents to become aware of their mental-health history, criminal history, medical needs, and behavioral patterns. She managed residents' prescription medications, assisted with their schoolwork, and remained on-call during her shift to meet their needs. During the evening shift, Lopez and other evening counselors kept the doors to the office locked, but residents were welcome to come to the office and request her assistance.

The Virginia Department of Social Services referred Ronald F. Dorsey Jr. to the YouthQuest program in 2015 when he was 17 or 18 years old. In the circuit court, Lopez's Estate claimed that when Dorsey was 12 years old, he had attempted to abduct and rape one of his therapists and had received sex-offender treatment as a consequence. His YouthQuest chart noted that he had been diagnosed with depression, anxiety, and enuresis. While he was in the program, Dorsey remained in the most restrictive, least independent phase, which required, among other things, a 10:00 p.m. curfew on weeknights.

On April 17, 2016, Lopez worked her 4:00 p.m. to midnight shift. Sometime after 10:00 p.m., Dorsey appeared at the locked door of Lopez's office and stated that he needed medication. Responsible for administering prescription medication, Lopez unlocked the door and allowed Dorsey inside. Dorsey then strangled Lopez to death, dragged her out of her office, and threw her body into a drainage ditch. Four months later, he murdered another YouthQuest counselor. After the second murder, police identified Dorsey as the perpetrator and arrested him for both murders. He pleaded guilty to the murders.

Seeking $10,000,000 in damages, the personal representative of Lopez's Estate filed a negligence claim against Intercept.[1] The Estate claimed that Intercept had negligently created an unsafe work environment for Lopez by failing to

- "properly assess, screen and/or review the individual participants in the program to ensure that they will not be a danger to other residents and employees of the program;"
- "closely monitor residents who they know or should have known to have a history of violent behavior;"
- "ensure that residents could not make unauthorized exits from their rooms after curfew;"

---

[1] The Estate also sued UDR, Inc., which had allegedly "owned, operated, managed, and/or maintained the YouthQuest office and residences" where the murder had occurred. *See* J.A. at 2, 7. The Estate later nonsuited its claims against UDR, Inc.

- "prevent residents from exiting out of their windows;"
- "provide adequate security to protect the well-being of its employees and patrol for residents violating curfew rules;"
- "warn its counselors about Dorsey's violent urges;"
- "establish rules to prevent female counselors from being alone with Dorsey;"
- "maintain video footage of common areas and offices;"
- "establish a protocol to prevent its Youth Counselors from being alone at night;"
- "train Youth Counselors to respond properly to a resident violating curfew rules; and"
- "report any missing persons to the police."

J.A. at 6. For these reasons, the Estate alleged that Intercept's negligence was the "direct and proximate cause" of Lopez's murder. *Id.* at 6-7.

Intercept responded to the complaint with a plea in bar, arguing that the exclusivity provision of the Virginia Workers' Compensation Act, Code § 65.2-307(A), precluded her negligence and wrongful death claims against Intercept. After conducting an evidentiary hearing, the circuit court began its analysis by summarizing the complaint:

> This lawsuit basically has been brought on the theory that both [the second murder victim] and Ms. Lopez were placed by their employment in a situation where the employer owed them some duty to protect them. So as has already been cited, this was observed by the Court in the *Plummer* case,[2] I believe it was. It puts us square[ly] within what the Workers' Compensation is set up to address.
>
> The analysis does not end there. I just observe that it is a little inconsistent to be saying that the employer owed a duty but that what happened here was not in any way related to the fact that these two people were employees.

J.A. at 254-55. Completing its analysis, the court then turned to the evidence presented at the plea-in-bar hearing and found that Lopez's death had been

[2] *Plummer v. Landmark Commc'ns, Inc.*, 235 Va. 78, 86-87 (1988).

3

primarily, of course, caused by the homicidal tendencies of Mr. Dorsey, but that [she was] selected for reasons that were related to [her] employment. It wasn't simply that he went to a spot and found [her] there.

I am finding from this evidence that . . . an advantage was taken of the spot where [her] employer required [her] to be . . . .

. . . I'm not finding on this evidence — that anybody here could have foreseen this necessarily. . . . But it is pretty clear that Mr. Dorsey knew that [Lopez's] employment put [her] in a situation where [she was] particularly vulnerable to his attacks.

*Id.* at 255-56. These findings led to the court's conclusion that Lopez's death had arisen out of and in the course of her employment, and thus, that her Estate's exclusive remedy was to seek benefits under the Workers' Compensation Act. The court entered a final order granting the plea in bar and dismissing the civil action with prejudice.

## II.

On appeal, the Estate argues that the circuit court erred in granting the plea in bar because the Workers' Compensation Act provides no remedy for Lopez's death. We disagree.

## A.

The Workers' Compensation Act, now over a century old, "reflects a legislative 'quid pro quo' that gave workers the right to assert no-fault liability against their employers (a right that they had never possessed) and took from them the right to sue their employers in tort for negligence (a right that they had possessed under the common law)." *Jeffreys v. Uninsured Emp.'s Fund*, 297 Va. 82, 93 (2019); *see also Butler v. Southern States Coop., Inc.*, 270 Va. 459, 465 (2005). To be effective, the Act must be interpreted to maintain that delicate balance of competing policies implicit in this "societal exchange," *Roller v. Basic Constr. Co.*, 238 Va. 321, 327 (1989). "A view of the Act's coverage that is too broad would authorize an award of compensation benefits but would bar a tort recovery, and a view that is too narrow would

4

authorize a tort recovery but would bar an award of compensation benefits." *Jeffreys*, 297 Va. at 93.

Code § 65.2-101's definition of a covered "[i]njury" polices the border between coverage and noncoverage. Subject to various statutory qualifications, an injury covered by the Act "means only injury by accident arising out of and in the course of the employment or occupational disease." Code § 65.2-101. The "arising out of" and "in the course of" elements of this definition "are not synonymous," and both must be satisfied for the Act to apply. *R & T Invs., Ltd. v. Johns*, 228 Va. 249, 252 (1984). The parties in this case agree that given the unique nature of the statute, "[e]ven murder may be an accident," *Hopson v. Hungerford Coal Co.*, 187 Va. 299, 305 (1948). They also concede that the fatal injury occurred in the course of the employment. They dispute only whether the injury arose out of the employment.

The "arising out of" requirement focuses on "the origin or cause of the injury." *R & T Invs., Ltd.*, 228 Va. at 252. The requirement can only be satisfied "if there is a causal connection between the claimant's injury and the conditions under which the employer requires the work to be performed." *Id.* The doctrine "excludes 'an injury which comes from a hazard to which the employee would have been equally exposed apart from the employment.'" *Taylor v. Mobil Corp.*, 248 Va. 101, 107 (1994) (citation omitted). Put another way, an actual risk of employment is "not merely the risk of being injured while at work." *Id.* In contrast to the "positional risk" doctrine, "which we have consistently rejected," the actual-risk doctrine insists that "[t]he causative danger must be *peculiar to the work* and not common to the neighborhood." *Hill City Trucking, Inc. v. Christian*, 238 Va. 735, 739-40 (1989) (emphasis added) (quoting *Baggett Transp. Co. of Birmingham v. Dillon*, 219 Va. 633, 638 (1978)). Because "it is practically impossible to formulate any one definition that will include every injury embraced"

5

by this standard and "exclude all injuries not embraced therein," *Honaker & Feeney v. Hartley*, 140 Va. 1, 8 (1924), courts contextualize the actual-risk doctrine to recognizable categories of employment.

In cases involving physical assaults against an employee, "the clearest ground of compensability . . . is a showing that the probability of assault was augmented either because of the particular character of claimant's job or because of the special liability to assault associated with the environment in which he or she must work." 1 Arthur Larson et al., Larson's Workers' Compensation Law § 8.01[1][a], at 8-3 (2021). Consistent with this approach, we have applied the actual-risk doctrine to fact-specific scenarios involving various types of physical assaults. We have held that a job that involved carrying or handling large sums of money, for example, presented the peculiar risk of robbery and assault. *See Continental Life Ins. v. Gough*, 161 Va. 755, 761 (1934). So too, we have found that an employee of a merchant dealing in precious metals, who made regular bank deposits of large sums of cash, had been exposed to a peculiar risk of robbery. *See R & T Invs.*, 228 Va. at 253-54. An employer's refusal to protect employees from a known, dangerous condition on the premises can also create a peculiar risk under some circumstances. *See Plummer v. Landmark Commc'ns, Inc.*, 235 Va. 78, 86-88 (1988); *Lynchburg Steam Bakery, Inc. v. Garrett*, 161 Va. 517, 519-23 (1933).

In other scenarios, however, the facts did not show "that the probability of assault was augmented either because of the particular character" of the job or the work conditions, 1 Larson et al., *supra*, § 8.01[1][a], at 8-3. We have held that assaults that are "purely personal in nature, both in motivation and in consummation" do not present a peculiar risk arising out of the employment, *Reamer v. National Serv. Indus., Inc.*, 237 Va. 466, 470-71 (1989), because they are "not directed against the employee as part of the employment relationship," *City of Richmond*

6

*v. Braxton*, 230 Va. 161, 335 (1985) (citation omitted). A co-worker's mere "personal attraction," we have similarly held, cannot "fairly be traced to [the victim's] employment as a contributing proximate cause." *Butler*, 270 Va. at 466; *see also Richmond Newspapers, Inc. v. Hazelwood*, 249 Va. 369, 374-75 (1995) (finding that the assaultive behavior was motivated by "friendship" not any employment circumstance). The same is true of workplace assaults arising out of "personal" disputes wholly unrelated to the employment. *See Hopson*, 187 Va. at 307-08 (affirming the Commission's factual insufficiency finding); *see also Hilton v. Martin*, 275 Va. 176, 180-81 (2008). It is also settled that cases involving random violence by an "unknown assailant" unrelated to any risk "peculiar to the work" do not implicate the Workers' Compensation Act. *See, e.g.*, *Baggett Transp. Co. of Birmingham*, 219 Va. at 643-44.

B.

The case now before us involves a complaint alleging in granular detail a long list of workplace conditions that were the "direct and proximate" cause of Lopez's murder. *See supra* at 2-3. The complaint asserts that the employer (1) failed to screen individual participants in the program to ensure that they had no violent propensities, (2) failed to closely monitor residents with a known history of violence, (3) failed to ensure that residents obeyed curfew rules, (4) failed to warn counselors of Dorsey's known violent urges, (5) failed to keep Dorsey from being alone with female counselors at night, (6) failed to provide video surveillance of common areas and offices, (7) failed to train counselors on avoiding nighttime meetings with residents, and (8) generally failed to provide adequate security to counselors in the workplace. Intercept's negligence in failing to correct these dangerous workplace conditions and to adequately protect Lopez, the complaint concludes, was the "the direct and proximate cause" of her death. J.A. at 6-7.

7

Supplementing these allegations, the evidence presented at the plea-in-bar hearing described the specific circumstances of Dorsey's fatal assault on Lopez. He appeared at Lopez's locked office door at night seeking medication. Because her job duties included providing prescription medications to residents, she unlocked and opened her door to him. Dorsey targeted Lopez in her unique capacity as an employee, at her place of employment, on the pretense of asking her to perform her employment duties. These facts, coupled with the allegations in the complaint, demonstrate that "the probability of assault was augmented either because of the particular character of [Lopez's] job or because of the special liability to assault associated with the environment in which" she was required to work, 1 Larson et al., *supra*, § 8.01[1][a], at 8-3.

In this respect, the present case is analogous to *Plummer*, in which a female newspaper carrier was shot as she waited to pick up newspapers at the employer's designated location at 2:00 a.m. *See* 235 Va. at 80. She claimed that the location was "deserted, dimly lit," and known by the employer to be unsafe. *See id.* at 86-87 (citation omitted). Her employer allegedly knew that this location presented "dangerous conditions in general for its carriers and particularly for women" and "failed to protect" her from these conditions. *Id.* (citation omitted). Another carrier, the claimant alleged, had complained of "molestation and hassling" at this location by unknown individuals. *Id.* at 86 (citation omitted). The claimant's own assertions implied that women in general and she in particular had been targeted for assaults at this location and that the employer had done nothing to protect them.

Turning to the "factual allegations" in the *Plummer* complaint and the interrogatory answers provided during discovery, we held that "[u]pon proof" of those facts, the plaintiff's claim would be exclusively covered by the Workers' Compensation Act. *Id.* at 86-87. Finding that the claimant's allegations described an assault arising out of her employment, we reiterated

our holding from *Lynchburg Steam Bakery* that "when an employer knows of a hazard to which the employee is subjected, it is his duty to remove the hazard or in some other way to afford adequate protection to his employee." *Id.* at 87 (quoting *Lynchburg Steam Bakery*, 161 Va. at 521). As the circuit court in the present case suggested, the facts and holding of *Plummer* provide the closest parallel in our caselaw to the unique circumstances of this case.

## III.

In sum, the circuit court correctly held that Lopez's murder had arisen out of the conditions of her employment. Because the exclusivity provision of the Virginia Workers' Compensation Act applies, we affirm the circuit court's judgment sustaining the plea in bar and dismissing this civil action.

*Affirmed*.