COURT OF APPEALS OF VIRGINIA

Present:   Judges O'Brien, Ortiz and Lorish
Argued at Fredericksburg, Virginia

UNPUBLISHED

CAMPING WORLD RV SALES, LLC, d/b/a
 CAMPING WORLD RV SALES (TVA), ET AL.
                                                    MEMORANDUM OPINION* BY
v.        Record No. 0439-24-4                     JUDGE DANIEL E. ORTIZ
                                                    MAY 27, 2025
DENNIS OCASIO

FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

Benjamin J. Trichilo (McCandlish Lillard, on brief), for appellant.

No brief or argument for appellee.

In workers' compensation cases, the line between horseplay and assault and battery is often blurry. Consider driving a golf cart into a coworker as a "practical joke." Does the driver's jocular intent mean that the coworker's injuries are compensable because he is an innocent victim of horseplay? Or is this conduct a common law assault and battery, hinging coverage on a connection to the coworker's employment? In the context of this case, the latter is true. We accordingly reverse the Workers' Compensation Commission's judgment.

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

BACKGROUND[1]

I. The Incident

In July 2021, Dennis Ocasio, an operations manager for Camping World RV Sales, LLC ("Camping World"), helped a customer pick up a trailer.[2] Ocasio walked in the Camping World "yard" while the customer followed behind in his vehicle. As he walked, Ocasio saw other Camping World employees Gunnar Tazelaar and Marcus Wagner driving a golf cart in his direction. Tazelaar accelerated toward Ocasio. Ocasio testified that he extended his arms and shouted, "Hey, hey, what are you doing? What are you doing?" When Ocasio tried to step out of the way, Tazelaar accelerated and turned the cart to aim it at him. Unable to evade the cart, Ocasio explained that his arms struck the side of the golf cart, his knees struck the front bumper, his hands hit the cart, and his upper body hit the frame supporting the cart's roof. He added that a large piece of cardboard loaded in the cart struck him in the mouth, drawing blood. He testified that he landed in a crouching position with his hands on the ground. The customer testified that Ocasio stumbled but did not fall. Ocasio alleged that the collision injured his arms and legs.

In a hand-written statement after the incident, Tazelaar wrote that "[he] was taking the trash from around the parts area" and as "a joke [he] thought it would be funny to tap [Ocasio] with a piece of cardboard that we were hauling." But "[he] had gotten too much speed [and]

_____

[1] "Upon review, we construe the evidence in the light most favorable to the party prevailing below, [Ocasio] in this instance." *Smithfield Packing Co. v. Carlton*, 29 Va. App. 176, 179 (1999). The Commission's factual findings that are supported by credible evidence are conclusive and binding on this Court. *Id.* "In determining whether credible evidence exists, [this Court will] not retry the facts, reweigh the preponderance of the evidence, or make its own determination of the credibility of the witnesses." *Wagner Enters., Inc. v. Brooks*, 12 Va. App. 890, 894 (1991).

[2] Although Ocasio testified that the customer was dropping off an RV, the customer testified in his deposition *de bene esse* that he was picking up a trailer.

when [he] breaked [sic] after the cardboard hit it was too late [and Ocasio] had been hit with the cart." Tazelaar added that he acted without malicious intent.

Even so, Ocasio believed that Tazelaar intentionally struck him with the cart to kill or otherwise seriously injure him, possibly because of a conflict between Ocasio and another employee who was friends with Tazelaar. As a result, in December 2021, Ocasio sought a criminal warrant against Tazelaar. Originally charged with felony unlawful wounding, Tazelaar pleaded nolo contendere and was convicted of misdemeanor assault and battery. Tazelaar explained that he entered the nolo contendere plea to avoid a felony conviction that he "was afraid [would] ruin [his] entire life."

At the hearing before the deputy commissioner, Tazelaar testified that he was moving refuse cardboard with a coworker, including a ten-foot-long cardboard cylinder. He also said that "everybody was pranking all the time" at work and he "always [did] little practical jokes" with other employees, so he "thought it'd be a fun little joke to hit [Ocasio] with the cardboard on the side." He claimed that "the bosses didn't care about [the pranks]." Contrary to his written statement, Tazelaar testified that he "did not hit [Ocasio] with t[he] golf cart" and did not knock Ocasio down, but only struck him with the cardboard cylinder. In other words, he claimed that "[he] didn't drive at [Ocasio] with a golf cart," but instead "drove next to him with the golf cart and then hit him with a cardboard box . . . on his right forearm." When asked about the inconsistency, Tazelaar said that when he wrote the statement, he "was afraid of getting arrested" and "simply wrote down" what "[Ocasio] said" in an attempt "to expedite the process" because he "wanted [it] to be over with."

Wagner, Tazelaar's passenger in the golf cart, testified that Tazelaar, "kind of steered towards [Ocasio]," and when "[Ocasio] walked out of the way," Tazelaar "kind of steered back towards him again." He then said that when they "came closer to [Ocasio]," Ocasio "reached out

- 3 -

with his hand to try to stop the golf cart," grabbing the strut or pillar supporting the cart's roof, at which point "the golf cart kind of stopped." Wagner did not describe the contact as a serious "impact" and testified that it did not knock Ocasio down. Wagner also denied that pranks were common among Camping World employees, saying that this was "the one and only instance [he had] ever seen of anything like that." It was also the only golf cart incident at Camping World that he was aware of.

## II. The Deputy Commissioner's Findings

Ocasio raised alternative arguments to the deputy commissioner. Under *Hilton v. Martin*, 275 Va. 176 (2008), he claimed that Tazelaar assaulted him because of his status as an employee. Alternatively, he argued that he was an innocent victim of horseplay under *Simms v. Ruby Tuesday, Inc.*, 281 Va. 114 (2011). If successful, he argued, either would allow compensation under the Act.

The deputy commissioner found that "the evidence in this case clearly establishe[d] [that Ocasio] suffered an injury by accident in the course of employment." So to establish his claim, it was Ocasio's burden to "prove[] by a preponderance of the evidence his injury arose out of his employment." In turn, the deputy commissioner considered whether the accident was "the result of horseplay or an assault." The deputy commissioner then held that the evidence supported a finding that "the accident [was] the result of an assault, not horseplay."

Relying on *Hilton*, the deputy commissioner explained that "even though Tazelaar's testimony and written statement suggest he intended to engage in horseplay, . . . [his] subjective motivation is immaterial." Distinguishing *Park Oil Co. v. Parham*, 1 Va. App. 166, 171 (1985), *Baker v. Lowe's Home Centers*, JCN VA00000990523 (Va. Workers Comp. Comm'n Mar. 29, 2016), and *Dublin Garment Co. v. Jones*, 2 Va. App. 165 (1986), the deputy commissioner then found that Ocasio was aware of the danger and had a reasonable fear of unwanted contact. And

- 4 -

unlike *Simms*, 281 Va. at 122, Ocasio "did not see himself as being an innocent victim of horseplay," nor did he "perceive Tazelaar's action of driving a golf cart towards him as playful." Ocasio instead sought criminal charges against Tazelaar, and the deputy commissioner found it significant that Tazelaar "ultimately pled nolo contendere to a charge of misdemeanor assault and battery." Indeed, the deputy commissioner maintained that "[w]hile it certainly was [Ocasio's] prerogative to pursue criminal charges, he cannot now contend the action that led to an assault conviction was merely horseplay."

Having found that Tazelaar's conduct was an assault and not horseplay, the deputy commissioner then concluded that the evidence did not show that the assault was directed at Ocasio as an employee or because of his employment; it was personal. The deputy commissioner thus found that Ocasio's injuries did not arise out of his employment and denied his claim. Ocasio then requested review by the full Commission.

III. The Commission's Findings

On review, the full Commission reversed, with one commissioner dissenting. To the Commission, "[v]iewing assault and horseplay through the lens of precedent invites the conclusion that they are mutually exclusive," thus compelling it to "choose whether the offending conduct was one or the other."

The Commission acknowledged that "[t]he lesson of *Hilton* is that Tazelaar's intentions were irrelevant as to whether he committed an assault," and "[p]roof of the assault exists in that he created in the mind of [Ocasio] the reasonable apprehension of a battery." "However," the Commission continued, "the defining characteristic of horseplay is one of intent and that the conduct, however dangerous, was done in jest." Further,

> Regardless of whether [Ocasio] accurately divined Tazelaar's intent, this was never an attempt to cause injury. Tazelaar's motivation was not malice. He perpetrated a prank. We know this

- 5 -

from Tazelaar's testimony that it was intended as a joke; we know that both Tazelaar and [Wagner] were laughing as they drove at [Ocasio]; and we know that Tazelaar either braked or steered by [Ocasio], thus avoiding the serious consequence of a direct collision.

Crediting Tazelaar's testimony that his intent was jocular, the Commission found that "Tazelaar's attempt to frighten [Ocasio] by use of his employer's cart was intended as a prank with [Ocasio] constituting its innocent victim." Because it was mere horseplay, the Commission reversed the denial of benefits and remanded the case to the deputy commissioner to consider any remaining defenses or to enter an award.

The dissenting commissioner recognized Tazelaar's testimony but found that "Tazelaar's actions were [not] the type of playful or joking conduct covered by the horseplay doctrine." Ocasio was put in fear of serious bodily harm regardless of whether Tazelaar intended it as a prank. Thus, the commissioner maintained that "[t]he case before us clearly involves an assault on [Ocasio]; therefore, Tazelaar's intention when performing this conduct is not relevant to the analysis" under *Hilton*. And like the deputy commissioner, the commissioner found it significant that Tazelaar pleaded no contest and was convicted of misdemeanor assault and battery. At the same time, the commissioner agreed with the majority and the deputy commissioner that "the evidence failed to establish that Tazelaar's assault had any relationship with [Ocasio's] status as an employee."

Camping World now appeals.[3]

---

[3] On remand, the deputy commissioner, following the Commission's ruling that Tazelaar's actions were horseplay, awarded Ocasio medical benefits for his right forearm injury. Camping World then sought review of that opinion by the full Commission. On February 23, 2024, the Commission, without readdressing the assault versus horseplay distinction, affirmed the deputy commissioner's award. Although the deputy commissioner's and the Commission's prior opinions address the issue we now assess on appeal, it is the Commission's February 2024 review opinion from which Camping World appeals.

STANDARD OF REVIEW

"On appeal from a decision of the Workers' Compensation Commission, the evidence and all reasonable inferences that may be drawn from that evidence are viewed in the light most favorable to the party prevailing below," Ocasio here. *Anderson v. Anderson*, 65 Va. App. 354, 361 (2015) (quoting *Artis v. Ottenberg's Bakers, Inc.*, 45 Va. App. 72, 83 (2005) (en banc)). "Furthermore, 'we are bound by the [C]ommission's findings of fact as long as "there was credible evidence presented such that a reasonable mind could conclude that the fact in issue was proved," even if there is evidence in the record that would support a contrary finding.'" *Id.* (alteration in original) (quoting *Artis*, 45 Va. App. at 83-84). "In determining whether credible evidence exists, [this Court will] not retry the facts, reweigh the preponderance of the evidence, or make its own determination of the credibility of the witnesses." *Wagner Enters., Inc. v. Brooks*, 12 Va. App. 890, 894 (1991). "Such deference to the Commission does not extend to questions of law, which we review *de novo*." *Anderson*, 65 Va. App. at 361; *see also Moncrief v. Div. of Child Support Enf't ex rel. Joyner*, 60 Va. App. 721, 727 (2012) ("We review *de novo* the trial court's application of defined legal standards to the particular facts of a case."); *Hilton*, 275 Va. at 180 ("[W]e are presented solely with a question of law concerning the trial court's application of the law to essentially undisputed facts. Therefore, we apply a de novo standard of review.").

ANALYSIS

Camping World asks this Court to reverse the Commission's conclusion that Ocasio suffered a compensable injury from horseplay and find instead that it was a personal assault unrelated to Ocasio's employment.[4]

---

[4] Specifically, Camping World argues that the Commission erred "by not applying the holdings in *Hilton v. Martin*, 275 Va. 176 (2008); *Butler v. So. States Coop, Inc.*, 270 Va. 459

"To qualify for workers' compensation benefits, an employee's injuries must result from an event 'arising out of' and 'in the course of' the employment." *Pinkerton's, Inc. v. Helmes*, 242 Va. 378, 380 (1991) (quoting *Cnty. of Chesterfield v. Johnson*, 237 Va. 180, 186 (1989)); *see* Code § 65.2-101. When the injuries both arise out of and occur in the course of employment, "the [Workers' Compensation] Act provides the sole and exclusive remedy available against the employer." *Butler v. S. States Coop., Inc.*, 270 Va. 459, 465 (2005); *see* Code § 65.2-307(A). But when the employee's injuries "do[] not come within the ambit of the Act, the employee's common-law remedies against his employer are preserved unimpaired." *Butler*, 270 Va. at 465.

Neither party disputes that Ocasio's injuries were "in the course of" his employment. Compensation thus hinges on whether his injuries arose out of his employment, which, here, turns on whether Tazelaar's actions were horseplay or common law assault or battery. When horseplay among coworkers causes injury, that injury is automatically compensable under the Workers' Compensation Act. In contrast, when a worker is injured from an assault and battery, whether from a coworker or someone else, there must be a nexus between the tort and the employment to fall within the Act. But this creates an important question: how do we make the threshold determination of what conduct is horseplay versus assault and battery? That is what we must decide here.[5]

---

(2005); and *Richmond Newspapers v. Hazelwood*, 249 Va. 369 (1995), and instead relying upon the factually dissimilar case of *Simms v. Ruby Tuesday, Inc.*, 281 Va. 114 (2011)."

[5] As stated, the Commission believed that assault and horseplay must be viewed as mutually exclusive under precedent, thus forcing it to choose between the two. Neither party challenges on appeal whether this is a correct statement of law, and "[i]n this case, as in all others, we seek to decide cases, 'on the best and narrowest ground available' from the record." *Foltz v. Commonwealth*, 58 Va. App. 107, 114 (2011) (en banc) (quoting *Kirby v. Commonwealth*, 50 Va. App. 691, 698 n.2 (2007)), *aff'd*, 284 Va. 467 (2012). We therefore do not address this issue.

Virginia applies the "actual risk" test to decide whether an injury arises out of employment. *Simms*, 281 Va. at 122. Under this test, an injury must have a "causal connection between the employee's injury and the conditions under which the employer requires the work to be done." *Id.* (quoting *Hilton*, 275 Va. at 180).[6] "Because 'it is practically impossible to formulate any one definition that will include every injury embraced' by [the actual risk] standard and 'exclude all injuries not embraced therein,' courts contextualize the actual-risk doctrine to recognizable categories of employment." *Lopez v. Intercept Youth Servs., Inc.*, 300 Va. 190, 197 (2021) (citation omitted).

So when a coworker injures another worker, "there are two clear, distinct lines of cases that may apply." *Simms*, 281 Va. at 125 (Mims, J., concurring). When the injury results from mere horseplay, it automatically satisfies the actual risk test. This is because "'the [workplace] creates [the] situation' that results in the injury," meaning "horseplay [is] an actual risk of the workplace." *Id.* at 123 (second alteration in original) (quoting *Park Oil Co.*, 1 Va. App. at 171);

---

[6] Concerning this test, our Supreme Court has said:

> [I]f the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises "out of" the employment. But [the applicable test] excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause and which comes from a hazard to which the workmen would have been equally exposed apart from the employment. The causative danger must be peculiar to the work and not common to the neighborhood. It must be incidental to the character of the business and not independent of the relation of [employer and employee]. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence.

*Simms*, 281 Va. at 122-23 (second alteration in original).

*see also Park Oil Co.*, 1 Va. App. at 171 ("The theory of recovery is that the [workplace] creates a situation where workers, being what they are—fallible and sometimes playful human beings—will from time to time engage in pranks, some of which are dangerous."). The focus is on the particular work environment.

> In essence, the playful or joking actions of the fellow employee are found to be an actual risk of the employment because horseplay is a natural incident of work contemplated by a reasonable person familiar with the whole situation, as a result of the exposure occasioned by the nature of the employment.

*Simms*, 281 Va. at 123. An injury from horseplay is thus presupposed to be "inherent to the injured co-worker's employment or . . . directed toward the co-worker as an employee." *Id.*

While an injury from horseplay automatically satisfies the actual risk test and is therefore compensable under the Act, this injury "is differentiated from and distinct from the instance when a worker is injured by an assault [or battery]." *Id.* at 122. When the employee's injuries arise from a common law assault or battery, there must be a proven connection between the assault or battery and the employment to be compensable. *Id.* at 123. But when the tort is purely personal to the employee, "liability rests on the tortfeasor rather than the employer." *Id.* at 126 (Mims, J., concurring).[7]

_____

[7] The dispositive issue in this case is whether Tazelaar's conduct was horseplay or assault and battery. This is because, if Tazelaar's conduct is assault and battery rather than horseplay, the record does not support a finding that the assault and battery was connected to Ocasio's status as an employee or because of his employment at Camping World. To prove a causal link in assault cases, a claimant must either show that (1) the employment conditions increased the risk of assault; or (2) the employment motivated the assailant to attack. *King v. DTH Contract Servs.*, 69 Va. App. 703, 713 (2019). For example, "'the peculiar character' of employment that requires a claimant to carry or handle cash may increase the risk an employee is robbed and assaulted while conducting his employer's business." *Id.* at 714; *see R & T Invs. v. Johns*, 228 Va. 249 (1984). Likewise, when an assailant retaliates against a claimant because of the claimant's performance of his job, the assault is directed against him because of his employment. *King*, 69 Va. App. at 714-15; *see Thomas Nelson Ltd. P'ship v. Fritz*, 11 Va. App. 269 (1990) (award affirmed where the evidence supported that the employee was assaulted by a vagrant when he tried to remove the vagrant from the employer's premises). Ocasio did not meet his

To decide whether the conduct here was horseplay or assault, we must examine the nuances flowing through related Virginia caselaw. "While it is difficult to imagine horseplay that causes injury that does not involve contact or the apprehension of contact, not all contact is battery and not all apprehension of contact is assault." *Id.* at 124 (Mims, J., concurring). An assault is "an act intended to cause either harmful or offensive contact with another person or apprehension of such contact, and that creates in that other person's mind a reasonable apprehension of an imminent battery." *Koffman v. Garnett*, 265 Va. 12, 16 (2003). A battery "is an unwanted touching which is neither consented to, excused, nor justified." *Id.* Horseplay, on the other hand, is playful. But it is not the case that whenever someone intends that their "conduct, however dangerous, was done in jest," the horseplay doctrine prevails. The *nature of the actions* causing injury warrant careful consideration.

Consider *Hilton v. Martin*, 275 Va. 176 (2008). Martin was known to be childish and immature. *Id.* at 178. While working as a medical technician on an ambulance, Martin turned on a manual cardiac defibrillator, picked up the defibrillator paddles, turned toward the front of the ambulance, and told his coworker, "I'm going to get you." *Id.* at 179. The coworker screamed, "Get those away from me," and pushed Martin back. *Id.* Although he "appeared to be replacing the paddles in the unit," Martin suddenly turned around and "again came toward her, striking [the coworker] with the paddles" and "simultaneously activating them." *Id.* The coworker screamed, went into seizure, and died three days later. *Id.*[8] On appeal, our Supreme Court held that

---

burden of proving this causal link; so if there was an assault and battery, it was personal and thus outside the scope of the Act.

[8] The coworker's father, as administrator of her estate, sued Martin and the ambulance company in tort on several grounds, including assault and battery. *Hilton*, 275 Va. at 179. The defendants filed pleas in bar arguing that the Workers' Compensation Act provided plaintiff's sole remedy. *Id.* The trial court agreed, ruling that "the 'accident' arose out of and in the course of the employment and that the plaintiff's exclusive remedy was . . . provided by the Act." *Id.*

- 11 -

"[i]t is immaterial whether the assailant's subjective motivation is playful, amorous, vindictive, or hostile." *Id.* at 181. Indeed, "[w]hether intended as flirtatious, merely playful, or as harassment," Martin's actions were an "assault." *Id.*

*Richmond Newspapers v. Hazelwood*, 249 Va. 369 (1995), is also instructive. Hazelwood was a pressman in the Richmond Newspapers pressroom. *Id.* at 371. On five occasions, his supervisor "goosed" him, *id.*, meaning he grabbed Hazelwood between his buttocks or genital area "with an upward thrust of a finger or hand from the rear," *id.* at 370 n.1. On one occasion, the supervisor penetrated Hazelwood's body, which triggered depression and PTSD in Hazelwood stemming from a childhood sexual assault. *Id.* at 371. Hazelwood sued, asserting tort claims that included assault and battery. *Id.* at 370. Richmond Newspapers tried to show that "goosing" was an actual risk of employment because it was prevalent in the newsroom for many years and workers only goosed those they considered friends. *Id.* at 373-75. In effect, Richmond Newspapers argued that goosing was pressroom horseplay, making it an actual risk of employment exclusively covered by the Act. *Id.* at 373. Our Supreme Court rejected this argument and found instead that it was an assault. *Id.* at 375.

Contrast both cases with *Simms v. Ruby Tuesday, Inc.*, 281 Va. 114 (2011). Simms was a restaurant server. *Id.* at 117. While walking into the kitchen to enter an order, three of his coworkers started throwing ice at him. *Id.* When he tried to shield his face from the ice with his arm, his shoulder dislocated. *Id.* Simms testified that he knew the employees who were throwing ice, that he had contact with them outside of work, and that he considered them friends. *Id.*

This Court found that the horseplay doctrine did not apply following *Hilton*, and thus concluded that Simms "did not sustain an injury that arises out of employment" because "the commission could reasonably find that ice-throwing was not a risk of employment" and "the

incident was personal . . . [to Simms].” *Simms v. Ruby Tuesdays, Inc.*, 54 Va. App. 388, 394,

396 (2009), *rev’d*, 281 Va. 114 (2011). The Supreme Court reversed, explaining that, “[i]n

deciding *Hilton*, it was not our intention to scuttle the horseplay doctrine, or to impose any

additional burden of proof upon claimants found to be the innocent victims of workplace

horseplay.” *Simms*, 281 Va. at 124. Rather, the actual risk analysis in *Hilton*—where an injured

employee must show a causal connection to their employment to be compensable—applies

solely to assault and battery cases, not those involving innocent victims of horseplay. *Id.* The

Court did not suggest, however, that a playful intent carries more weight in horseplay cases than

in assault cases.

> Applying the law to Simms, the concurrence summarized it best:

> > Simms’[s] co-workers neither battered nor assaulted him. They did not pelt him with ice in a rude, insolent, or angry manner. Their conduct was jocular and playful. They did not intend to cause him harm or offense, and Simms did not apprehend the contact to be rude, insolent, angry, harmful, or offensive. These facts clearly are distinguishable from those in *Hilton*, where the victim “screamed, ‘Get those away from me,’ and pushed [the assailant] back” in an attempt to escape. 275 Va. at 179. These facts are much closer to those in *Dublin Garment Co. v. Jones*, 2 Va. App. 165 (1986), where the injured employee “interpreted [the contact] as a ‘friendly gesture.’” *Id.* at 166.

*Id.* at 125 (Mims, J., concurring) (second and third alterations in original).[9]

---

[9] Justice Mims further explained that

> [b]y comparing the facts of this case with *Hilton* and *Dublin Garment Co.*, I do not suggest that whether workplace contact is horseplay turns on the perspective of the injured employee. Nevertheless, the common law intentional torts of assault and battery require some consideration of the intent of the perpetrator and the perception of his victim.

*Id.* at 125 n.1 (Mims, J., concurring).

- 13 -

These cases tell us that a central focus must be on the nature of the conduct, not just the subjective motivation. Indeed, our caselaw acknowledges that what one party intends as a prank can nonetheless rise to the level of assault and battery. In *Hazelwood*, the Supreme Court recognized that some employees considered goosing a prank with humorous intent, yet it found that the supervisor's goosing that penetrated Hazelwood's body was offensive contact constituting a personal assault. 249 Va. at 375. Likewise, it is of no moment that the *Hilton* Court did not directly examine whether Martin's actions could have been horseplay. The Court "presuppose[d]" the tortious act was an assault, *Simms*, 281 Va. at 125 n.2 (Mims, J., concurring), and focused on compensability. This was not because the threshold distinction between horseplay and assault and battery did not matter, but because it understood that although Martin was playful and immature, his specific actions—which were foreseeably likely to cause physical injury—paired with his coworker's fearful response, were not horseplay. *Hilton*, 275 Va. at 181. And in *Simms*, the Court reiterated that playful intent and the injured employee's perspective is but one consideration in assessing the nature of the actions causing injury.

Yet the Commission here focused only on Tazelaar's purported playful intent because he and the passenger were laughing as they drove at Ocasio and because Tazelaar claimed he braked or steered by Ocasio to avoid a direct collision.[10] This was error.

"To be effective, the Act must be interpreted to maintain [a] delicate balance of competing policies." *United Cont'l Holdings, Inc. v. Sullivan*, 79 Va. App. 540, 550 (2024) (quoting *Lopez*, 300 Va. at 196). Viewing the Act too broadly "would authorize an award of compensation benefits but would bar a tort recovery," and viewing the Act too narrowly "would

---

[10] Testimony not only contradicted by Tazelaar's written statement, but by Ocasio's, Wagner's, and the customer's testimonies that Tazelaar directly struck Ocasio with the golf cart. *See supra* Background Section I.

authorize a tort recovery but would bar an award of compensation benefits." *Id.* (quoting

*Jeffreys v. Uninsured Emp.'s Fund*, 297 Va. 82, 93 (2019)).  In finding that the horseplay

doctrine applies merely because Tazelaar intended his action as a prank, the Commission

construes the Act too broadly.  If accepted, the Commission's position could foreclose workers

from pursuing their common law rights in any case where the assailant plausibly claims to have

acted in jest, no matter how dangerous, offensive, or unwelcome the action is.  It would also

create liability for employers that would normally rest on the tortfeasor.  Both would undermine

the purpose of the Act.  *See id.* ("The Workers' Compensation Act, now over a century old,

'reflects a legislative "quid pro quo" that gave workers the right to assert no-fault liability against

their employers . . . and took from them the right to sue their employers in tort for negligence.'"

(alteration in original) (quoting *Lopez*, 300 Va. at 196)).

Here, the record supports a finding that Ocasio's injuries were the result of a personal

assault and battery.  By his own admission, Tazelaar intended at least to strike Ocasio with the

cardboard loaded on the golf cart, and according to his original statement, he struck Ocasio not only

with the cardboard but with the cart itself.  Ocasio shouted at Tazelaar as the cart approached him,

tried to evade the cart, and shielded himself from the impact with his arms.  Still, Tazelaar

accelerated and tracked Ocasio's movement.  Simply put, Tazelaar's actions were no more "done in

jest" than the supervisor's goosing of Hazelwood or Martin's use of defibrillator paddles.  He

intended to cause harmful or offensive contact to Ocasio, and Ocasio had a reasonable

apprehension of an imminent battery.  *See Viney v. Commonwealth*, 269 Va. 296, 301 (2005)

("Intent may be, and most often is, proven by circumstantial evidence and the reasonable inferences

to be drawn from proven facts.").  Tazelaar's conduct was thus a personal assault.[11]

---

[11] At first blush, *Park Oil Co. v. Parham*, 1 Va. App. 166 (1985), might appear factually
similar to this case.  But it is distinguishable in key respects.  *Park Oil* involved a minute legal

And although seemingly ignored by the Commission, Tazelaar pleaded nolo contendere to and was convicted of criminal assault and battery after Ocasio sought charges. It is true that "a plea of *nolo contendere* is not a confession of guilt and has no effect beyond permitting the court to impose sentence in a particular case." *Commonwealth v. Jackson*, 255 Va. 552, 555 (1998). "Nonetheless, by entering a plea of *nolo contendere*, the defendant 'implies a confession . . . of the truth of the charge . . . [and] agrees that the court may consider him guilty' for the purpose of imposing judgment and sentence." *Id.* (alterations in original) (quoting *Honaker v. Howe*, 60 Va. (19 Gratt.) 50, 53 (1869)). Thus, while not equivalent to a guilty plea, Tazelaar's acceptance of a nolo contendere plea, and his conviction, add weight to the conclusion that Tazelaar's "prank" rose to the level of assault and battery, whatever his subjective intent. *See* Code § 8.01-418 ("Whenever, in any civil action, it is contended that any party thereto pled . . . nolo contendere, . . . evidence of said plea . . . shall be admissible.").

CONCLUSION

The Commission erred in finding that Ocasio was an innocent victim of horseplay. Ocasio's injuries were the result of an assault and battery. No evidence proves, however, that the assault and battery was related to Ocasio's status as an employee or because of his employment

---

nuance in the elements of assault and battery. The assailant never intended to hit Parham with his vehicle; he merely meant to spin the tires to scare Parham. *Id.* at 168. But a mechanical malfunction caused him to strike Parham with the vehicle. *Id.* Parham was unaware of the danger until he was struck, so he could not possess a reasonable apprehension of imminent battery. *Id.* at 170. The Court thus held that the case fell more in line with horseplay cases because it was not a technical assault and battery, Parham and the assailant were friends, and the work environment exposed Parham to such risks. *Id.* at 170-71. Here, unlike *Park Oil*, Tazelaar intended to hit Ocasio, and Ocasio was aware of the danger and tried to avoid it. What's more, Tazelaar accelerated and turned the cart to aim it at Ocasio after he tried to escape. Ocasio and Tazelaar are also not friends, nor is there evidence that the Camping World work environment exposed Ocasio to risks of being struck with a golf cart.

- 16 -

at Camping World; it was purely personal.  His injuries are therefore not compensable under the

Act.  We accordingly reverse the Workers' Compensation Commission's judgment.

*Reversed.*